ORIN R. AND IMOGENE R. WOODBURY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Woodbury v. Commissioner
Docket No. 25523-85.
United States Tax Court
T.C. Memo 1988-272; 1988 Tax Ct. Memo LEXIS 295; 55 T.C.M. (CCH) 1131; T.C.M. (RIA) 88272; June 22, 1988. Craig T. Vincent, for the petitioners. Mark H. Howard, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge:[1] By notice of deficiency dated April 15, 1985, respondent determined the following deficiencies in petitioners' Federal income tax: Tax Year
Deficiency
1980
$ 31,824.28
1981
73,200.83
1982
46,370.84
*299 After concessions by respondent, [2] the issues for decision are: (1) Whether petitioners made a valid election to calculate their 1977 charitable contribution deduction and carryovers under section 170(b)(1)(C)(iii). [3]
(2) If a valid election under section 170(b)(1)(C)(iii) was made, whether petitioners may revoke their election and calculate their 1977 charitable contribution deduction and carryovers in accordance with section 170(b)(1)(C)(i). The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife and resided in Utah at the time they filed their petition for redetermination in this case. Petitioners are calendar *300 year, cash basis taxpayers who filed joint Federal income tax returns during each of the years at issue. On or about April 15, 1977, petitioners donated their entire one-third interest in the Ben Lomond Hotel, Ogden, Utah, to Weber County. Weber County is a political subdivision of the state of Utah within the meaning of section 170(c)(1) such that contributions thereto qualify the donor for a charitable contribution deduction pursuant to section 170(a). Since the hotel interest qualified as "capital gain property" within the meaning of section 170(b)(1)(C)(iv), petitioners had to determine which of two permissible methods available under section 170 they would utilize in calculating the amount of their charitable contribution deduction as a result of the donation. The general rule with respect to charitable contributions of property is that the amount of the deduction is equal to the fair market value of the property at the time of the contribution. Sec. 1.170A-1(c), Income Tax Regs. However, the deduction allowed in any given year for the contribution of *301 capital gain property may not exceed 30 percent of the taxpayer's "contribution base." [4]Sec. 170(b)(1)(C)(i). Alternatively, the individual taxpayer may elect to reduce the amount of his charitable contribution by 50 percent of the gain which would have been capital gain had the contributed property been sold by the taxpayer at fair market value. Sec. 170(b)(1)(C)(iii); sec. 170(e)(1)(B). Sec. 1.170A-8(d)(2), Income Tax Regs. *302 [5] When such an election is made, the taxpayer may deduct the charitable contribution to the extent it does not exceed 50 percent of his contribution base, rather than the 30-percent limitation which applies without a section 170(b)(1)(C)(iii) election. In computing the amount of their charitable contribution and allowable deduction with respect to the donation of their interest in Ben Lomond Hotel, petitioners chose to use the second method. They attached a separate work sheet to their 1977 Federal income tax return in which they calculated their charitable contribution attributable to donation of their hotel interest as $ 274,384.12 determined as follows: Fair Market Value of Donated Property
[6] $ 466,666.67 $ 466,666.67 Basis of Property
(82,101.56)
Potential Long-Term Capital Gain
384,565.11 50 percent of Potential Gain
(192,282.55)
Charitable Contribution
$ 274,384.12 *303 Petitioners made other charitable contributions of $ 7,724.36 in 1977 and had adjusted gross income of $ 122,258. They applied a 50-percent contribution base limitation to arrive at an allowable charitable contribution deduction of $ 61,129 and a $ 220,979.48 contribution carryover into future years. Petitioners calculated their charitable contribution deductions for 1978 and 1979 consistent with this methodology, fully utilizing the carryover of their 1977 contributions by 1979. On June 11, 1981, petitioners filed an amended return for 1977. Amended returns for 1978 and 1979 were filed on August 15, 1981. In each of these amended returns, petitioners recalculated their charitable contribution deductions and carryovers using the full fair market value of their interest in the hotel as the amount of their contribution and applying a 30-percent contribution base limitation. In their Federal income tax returns for 1980, 1981, and 1982, petitioners claimed charitable contribution deductions based on carryovers of the 1977 contribution of their interest in the hotel. These deductions were calculated in conformity with the methodology used on the amended returns and presumed *304 that the charitable contribution deductions and carryovers attributable to the 1977 donation of the interest in the hotel were properly calculated pursuant to section 170(b)(1)(C)(i). In his notice of deficiency, respondent determined that petitioners had made a valid and irrevocable election on their initial 1977 tax return to use section 170(b)(1)(C)(iii) and were thus precluded from revoking their election and using section 170(b)(1)(C)(i). Using section 170(b)(1)(C)(iii), the carryovers with respect to the 1977 charitable contribution would have been fully utilized by 1979. He thus disallowed the charitable contribution deductions taken in 1980, 1981, and 1982, to the extent they were attributable to carryovers of the 1977 contributions. The determinations of respondent in his statutory notice are presumptively correct and petitioners bear the burden of proving otherwise. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Petitioners argue that they did not make a valid election under section *305 170(b)(1)(C)(iii) on their original 1977 tax return. That section specifies that such an election shall be made at such time and in such manner as the Secretary prescribes by regulations. The regulations state that a section 170(b)(1)(C)(iii) election shall be made by attaching a separate statement to the income tax return for the election year indicating that the election is being made. Sec. 1.170A-8(d)(2)(iii), Income Tax Regs. Since petitioners did not attach such a statement to their return, they argue that no valid election was made and that they were thus free to amend their return and elect section 170(b)(1)(C)(i) treatment. Alternatively, petitioners argue that if a valid election under section 170(b)(1)(C)(iii) was made, they are entitled to revoke it. They contend that the legislative history of section 170 indicates that Congress intended that section 170(b)(1)(C)(iii) elections be revocable. They argue that the administrative burdens created by allowing revocation of section 170(b)(1)(C)(iii) elections are minimal and do not justify construing such elections as irrevocable. We are unpersuaded by either of petitioners' arguments. We thus *306 hold that petitioners made a valid section 170(b)(1)(C)(iii) election on their initial 1977 return. Further, we hold that once a valid 170(b)(1)(C)(iii) election is made, it cannot later be revoked in favor of a computation under section 170(b)(1)(C)(i). Petitioners acknowledge that this case is factually indistinguishable from Grynberg v. Commissioner,83 T.C. 255 (1984). In Grynberg, the taxpayers filed a return computing their charitable contribution deductions and carryovers using section 170(b)(1)(C)(iii) even though they had failed to attach a narrative statement to the return stating that the election was being made. In finding that a valid election had been made, we described a valid election as consisting of two elements: (1) There must be a choice between two or more alternatives, and (2) there must be an overt act by the taxpayer in communicating his choice to respondent, i.e., a manifestation of choice. Grynberg v. Commissioner, supra at 261. Both elements are present here as they were in Grynberg. Petitioners were given a choice *307 between two alternative methods of computing their charitable contribution deduction. They chose a method and manifested their choice by calculating their deduction in accordance therewith. Petitioners acknowledge that this was their intent. Petitioners argue that their failure to follow the election requirements of section 1.170A-8(d)(2)(iii), Income Tax Regs., precludes a finding that a valid election was made on their initial return. However, the fact that petitioners failed to attach a narrative description of their election to their return does not vitiate their choice. If the requirements of a regulation "are procedural or directory in that they are not of the essence of the thing to be done but are given with a view to the orderly conduct of business, they may be fulfilled by substantial, if not strict, compliance." Taylor v. Commissioner,67 T.C. 1071, 1077-1078 (1977). See also American Air Filter Co. v. Commissioner,81 T.C. 709, 719 (1983); Columbia Iron & Metal Co. v. Commissioner,61 T.C. 5, 8-9 (1973); *308 Sperapani v. Commissioner,42 T.C. 308, 330 (1964); Cary v. Commissioner,41 T.C. 214, 218 (1963). In our view, the "essence" of section 170(b)(1)(C)(iii) is that use of the more favorable 50-percent contribution base limitation contained therein is conditioned on the taxpayer's agreement to reduce the amount of his contribution by 50 percent of the untaxed appreciation thereon. The election requirements contained in the regulations, while certainly helpful to respondent in processing and auditing returns, are in our view merely directory. Cf. Taylor v. Commissioner, supra.By setting out in a clearly labeled work sheet the reduction of their contribution by 50 percent of its value and application of the 50-percent limitation, petitioners substantially complied with the statute. They thus effectively made a section 170(b)(1)(C)(iii) election in their original 1977 return. [7]
*309 Petitioners next argue that even if they effectively elected section 170(b)(1)(C)(iii) treatment on their initial return, their election was revoked when they filed an amended 1977 Federal income tax return on which they calculated their charitable deduction pursuant to section 170(b)(1)(C)(i). We disagree. The argument that section 170(b)(1)(C)(iii) elections are revocable was also rejected by us in Grynberg.The general rule that once a taxpayer makes an elective choice on a return his election is irrevocable is well established. The genesis of this "doctrine of election" is considered to be Pacific National Co. v. Welch,304 U.S. 191 (1938). The doctrine has since been applied to numerous elections available to taxpayers. See Estate of Stamos v. Commissioner,55 T.C. 468, 474 (1970) and cases cited therein. Simply stated, the rule provides that once a taxpayer makes an elective choice, "he is stuck with it." Roy H. Park Broadcasting, Inc. v. Commissioner,78 T.C. 1093, 1134 (1982). Petitioners contend that the legislative *310 history of the Tax Reform Act of 1969, which added section 170(b)(1)(C)(iii) to the Code, indicates a congressional intent that the election be revocable. We addressed and rejected this argument in Grynberg.We find nothing in the legislative history which would suggest that Congress intended anything other than the general doctrine of election as established in Pacific National to apply to elections made under section 170(b)(1)(C)(iii). Reliance on a general Congressional intent -- to encourage charitable contributions -- to infer that section 170(b)(1)(C)(iii) elections were intended to revocable is misplaced. As stated in Burke & Herbert Bank & Trust Co. v. Commissioner,10 T.C. 1007, 1009-1010 (1948): While enactment of a statutory choice may be prompted by a legislative intent to give relief, the burden of deciding the more advantageous course rests on the taxpayer, who must suffer the consequences of unforeseen contingencies or errors of judgment in its exercise. * * * Petitioners' argument that the rules of statutory construction provide a basis for finding section 170(b)(1)(C)(iii) elections revocable is also flawed. Petitioners argue that *311 of the eight election provisions added to the Code by the Tax Reform Act of 1969, two were made expressly irrevocable (sections 83(b) and 1251(b)(4)). They argue that when Congress sought to make an election irrevocable, it did so explicitly. Therefore, they contend that the other six elections created by the Tax Reform Act of 1969, including the section 170(b)(1)(C)(iii) election, must have been intended to be revocable. Petitioners' analysis is flawed in that section 83(b) and 1251(b)(4) do not make those elections irrevocable, but simply specify the manner in which they may be revoked (i.e., only with the Commissioner's consent). Petitioners have turned the situation on its head. It is more likely that Congress explicitly stated when it was departing from the general rule of irrevocability (as in sections 83(b) and 1251(b)(4) and was silent when the general rule was meant to apply rather than vice versa. Petitioners' final argument is that the general rule of irrevocability established in Pacific National should not apply to elections under section 170(b)(1)(C)(iii) since allowing revocations will not create sufficient administrative burdens on respondent to justify *312 making the election irrevocable. We find petitioners' argument unpersuasive. To allow petitioners to revoke their election would effectively enlarge the statutory period for filing returns to include the period during which a claim for refund can be made. See section 6511(b); Pacific National Co. v. Welch, supra, at 194. Such a rule would tend to increase the number of refund claims as taxpayers use hindsight to choose the most favorable tax treatment. Such a policy would thus "impose burdensome uncertainties upon the administration of the revenue laws." Pacific National Co. v. Welch, supra at 192. In sum, we hold that petitioners made a valid election under section 170(b)(1)(C)(iii) on their initial 1977 tax return. The fact that the election made by petitioners was less advantageous to them than anticipated is unfortunate but immaterial. The revocation petitioners seek is based precisely on the type of hindsight which has consistently been held to bar a change in an election previously made. Dougherty v. Commissioner,61 T.C. 719, 722 (1974), *313 and cases cited therein. Petitioners are thus powerless to change their election. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. By order of the Acting Chief Judge, this case was reassigned to Judge Jules G. Korner III↩ for opinion and decision. 2. Respondent has stipulated that the deficiency for 1980 should be $ 30,890.78 to reflect certain investment tax credits and energy credits not taken into account in his initial deficiency calculations. ↩
3. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
4. The contribution base is the taxpayer's adjusted gross income calculated without regard to any net operating loss carrybacks. Sec. 170(b)(1)(E). Any contributions in excess of the 30-percent contribution base limitation are carried over into the succeeding five taxable years in order of time. Sec. 170(b)(1)(C)(ii)↩. The contribution carried over into a succeeding year will be allowed as a deduction in such succeeding year to the extent the charitable contributions in such year do not exceed 30 percent of the contribution base for that year. 5. We note that what is now designated as sec. 170(b)(1)(C) was found at sec. 170(b)(1)(D)↩ at the time the regulations were adopted. 6. For purposes of this case only, the parties have stipulated that this is the fair market value of the donated property.↩
7. The three cases cited by petitioners in support of their position that a valid election can only be made by strict compliance with regulatory requirements are inapposite. In Ackerman v. United States,318 F.2d 402 (10th Cir. 1963), a taxpayer was precluded from electing the installment method of reporting her profit from the casual sale of realty when she failed to make the election and report the sale on her income tax return for the year of sale as required by regulation. See sec. 1.453-8(b)(1), Income Tax Regs. However, in that case the taxpayer could not argue that she had complied with the regulation in any respect since no mention of the sale was made anywhere on her return for the year of sale. Therefore the taxpayer could not argue that she had "substantially" complied with the regulation. In both the other cases cited by petitioners, the court accepted the proposition that substantial, rather than strict, compliance with regulatory election requirements is sufficient when the requirements are merely procedural rather than essential to the regulatory scheme. Knight-Ridder Newspapers, Inc. v. United States,743 F.2d 781, 795 (11th Cir. 1984); Young v. Commissioner,783 F.2d 1201, 1205 (5th Cir. 1986). However, both courts went on to hold that neither taxpayer had made an effective election since neither had complied with the essential elements of the regulation. Both had simply inserted amounts on their respective returns without any back-up documentation explaining their computations or giving respondent any clue that an election was being made. In contrast, petitioners provided a supplemental worksheet in their 1977 Federal income tax return which clearly and unambigously indicates that their charitable contribution deduction was being calculated pursuant to sec. 170(b)(1)(c)(iii)↩.