**Orin R. WOODBURY and Imogene R. Woodbury, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 88–2983.

United States Court of Appeals, Tenth Circuit.

April 4, 1990.

Craig T. Vincent of Nygaard, Coke & Vincent, Salt Lake City, Utah, for petitioners-appellants.

James I.K. Knapp, Acting Asst. Atty. Gen., and Gary R. Allen, Robert S. Pomerance, and Janet Kay Jones, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before McKAY and SEYMOUR, Circuit Judges, and KANE, Senior District Judge.*

SEYMOUR, Circuit Judge.

Petitioners appeal from the judgment and decision of the United States Tax Court which denied their petition for review of the Commissioner's finding of tax deficiencies. The Tax Court rejected petitioners' argument that their election to use the "fifty-percent method" in calculating their charitable contribution deduction was invalid and, in the alternative, that the election was subsequently revocable by them. We likewise reject petitioners' arguments and, for the reasons set forth below, we affirm.[1]

Petitioners are taxpayers who, in 1977, donated their entire one-third interest in the Ben Lomond Hotel to Weber County, a political subdivision of the State of Utah. This donation qualified as a charitable contribution under I.R.C. § 170(c)(1),[2] and so could be deducted from petitioners' taxable income pursuant to section 170(a)(1). Because the hotel interest constituted "capital gain property," however, it was subject to the special limitations on deducting such property. *See id.* § 170(b)(1)(C). This limitation allowed taxpayers to choose between two alternative methods of calculating the charitable contribution deduction.

Under the first alternative (the thirty-percent method), the taxpayer's deduction equals the fair market value of the taxpayer's donation at the time of contribution, subject to a limit of thirty percent of the taxpayer's contribution base for the year the deduction is taken. *See id.* § 170(b)(1)(C)(i). Any amount in excess of thirty percent may be taken as a charitable contribution deduction in each of the five succeeding taxable years. *Id.* § 170(b)(1)(C)(ii).[3] The thirty-percent method constitutes the general rule with respect to deductions for the charitable contribution of capital gain property. *See 8 J. Mertens, Law of Federal Income Taxation,* § 31.34 (1987).

The taxpayer may also elect to calculate her deduction amount by a second method. Under this alternative (the fifty-percent method), the deduction is calculated by subtracting fifty percent of the long-term capital gain which would have been realized had the property been sold at the time of contribution from the amount of the property's fair market value, and then limiting the deduction to fifty percent of the contribution base for each year in which the deduction is taken. *See 26 I.R.C.* §§ 170(b)(1)(C)(iii), 170(e)(1)(B). The taxpayer thus is able to deduct a larger share of her contribution base in each year for which the deduction may be taken, but the taxpayer will deduct a total amount which will be lower than had she employed the

---

* Honorable John L. Kane, Jr., United States Senior District Judge, District of Colorado, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the relevant years.

3. As the Tax Court stated:

"The contribution base is the taxpayer's adjusted gross income calculated without regard to any net operating loss carrybacks. [Section 170(b)(1)(F)]. Any contributions in excess of the 30–percent contribution base limitation are carried over into the succeeding five taxable years in order of time. Sec. 170(b)(1)(C)(ii). The contribution carried over into a succeeding year will be allowed as a deduction in such succeeding year to the extent the charitable contributions in such year not exceed 30 percent of the contribution base for that year."
*Woodbury v. Commissioner,* 55 T.C.M. (CCH) 1131, 1131 n. 4 (1988).

thirty-percent method.[4]

Petitioners concede that they intended to make an election under sections 170(b)(1)(C)(iii) and 170(e)(1)(B) to use the fifty-percent method for the tax year 1977, and that they calculated their charitable contribution accordingly. They attached a separate worksheet to their 1977 federal income tax return in which they calculated the deduction for the charitable contribution of the hotel interest. The Tax Court characterized the information on the worksheet as follows:

| | |
|---|---|
| Fair Market Value of Donated Property | $466,666.67 |
| Basis of Property | 82,101.56 |
| Potential Long–Term Capital Gain | 384,565.11 |
| 50 percent of Potential Gain | 192,282.55 |
| Charitable Contribution | $274,384.12 |

*See Woodbury v. Commissioner*, 55 T.C.M. (CCH) 1131, 1132 (1988).[5] According to the Tax Court, petitioners made other charitable contributions in 1977 totalling $7,724.36, and had an adjusted gross income of $122,258.00. Applying the charitable deduction limitation of fifty percent of the contribution base, petitioners had an allowable charitable contribution deduction of $61,129.00, with a $220,974.48 contribution carryover. Petitioners again calculated their charitable contribution deduction on their 1978 and 1979 tax returns according to the fifty-percent method. Their deduction amount was fully exhausted by the end of the 1979 tax year.

In 1981, petitioners filed amended returns for the years 1977, 1978, and 1979. In these returns, they recalculated their charitable contribution deduction stemming from the 1977 donation of their hotel interest. The new calculation utilized the thirty-percent method, which gave petitioners a larger overall amount to deduct and a longer period in which to deduct the contribu-

tion carryovers. Petitioners' 1980, 1981, and 1982 tax returns contained deduction carryovers for the 1977 charitable contribution previously depleted under the fifty-percent method.

The Commissioner audited petitioners' returns for 1980 through 1982 and concluded that they had made a valid election in 1977 to utilize the fifty-percent method for the hotel interest donation, and that the election was irrevocable. The Commissioner therefore disallowed the charitable contribution deduction carryover amounts taken in 1980, 1981, and 1982 attributable to the 1977 contribution, and found income tax deficiencies for each of those years. Petitioners challenged the Commissioner's determination, but the Tax Court held for the Commissioner.

The parties have stipulated to the relevant facts. We review the Tax Court's determination of law de novo. *Leder v. Commissioner*, 893 F.2d 237, 240 (10th Cir. 1989).

Petitioners make two arguments to support their recalculation. First, they contend that they never made a valid election to utilize the fifty-percent method and so are not bound by their initial calculation. Second, they argue that even if they made a valid election to employ the fifty-percent method, that election is revocable.

■ In support of their first argument, petitioners refer us to the statutory and regulatory language. They note that an election to use the fifty-percent method must be "made at such time and in such manner as the Secretary prescribes by regulations." I.R.C. § 170(b)(1)(C)(iii). According to the regulations, "[t]he election ... *shall* be made by attaching to the income tax return for the election year a statement indicating that the election under section 170(b)(1)(D)(iii) and this subparagraph is being made." Treas. Reg.

---

**4.** For further explanation of the two methods, *see* Treas.Reg. § 1.170A–8(f) Example (9) (1989).

**5.** On petitioners' worksheet, the fair market value was called the "value of gift;" the basis of

property was the "book value of gift"; and the potential long-term capital gain was "gift value less book value." Petitioners do not contest the Tax Court's description of the information on the worksheet.

§ 1.170A–8(d)(2)(iii) (emphasis added).[6] The Commissioner further emphasized the requirements by stating that the election *"must* be made by attaching a statement to the 'income tax return for the election year' indicating that the election is being made." Rev.Rul. 77–217, 1977–1 C.B. 64 (emphasis added). Petitioners assert that the use of the words "shall" and "must" in the Regulation and the Revenue Ruling evinces an intent to require that taxpayers attach to their tax return an "express statement that the Election was being made." Appellants' Brief at 9. Petitioners contend that without such an express statement, and without any specific reference to the election, the Code, or the Regulation, they cannot be considered to have made a valid election under section 170(b)(1)(C)(iii). They argue that they "are therefore required and entitled to calculate the ... charitable contribution deduction under the [thirty-percent] limitation of [s]ection 170(b)(1)(C)(i)." Appellants' Brief at 13.

Petitioners have no support for their implicit contention that the "must" and "shall" language necessitates literal compliance with the requirements for an election. It is well established that in determining whether an election has properly been made absent adherence to literal requirements, a court should assess whether the taxpayer has *substantially complied* with the requirements, notwithstanding the "shall" and "must" language. *See, e.g., Atlantic Veneer Corp. v. Commissioner,* 812 F.2d 158, 160–61 (4th Cir.1987); *Young v. Commissioner,* 783 F.2d 1201, 1206 (5th Cir.1986); *Knight–Ridder Newspapers, Inc. v. United States,* 743 F.2d 781, 794–96 (11th Cir.1984).

In assessing substantial compliance, a court must ask whether the requirements are mandatory in nature, or merely procedural details established to facilitate the Commissioner's administration of the Internal Revenue Code. *See Columbia Iron & Metal v. Commissioner,* 61 T.C. 5, 8 (1973). As the court stated in *Atlantic Veneer,*

"[a]t the heart of the inquiry into whether a particular election is procedural or mandatory is whether the failure in complying with the literal requirements by the taxpayer goes to the 'essence' of the provision, or whether it is merely a relatively ancillary, minor procedural infirmity."

812 F.2d at 160–61.

In support of their position, petitioners cite to two cases in which the circuit court rejected taxpayers' arguments that they had substantially complied with election requirements. In the first of those cases, *Knight–Ridder,* the court observed that one of the "essential purposes" of the relevant Code section was "that the Commissioner actually know an election has been made." 743 F.2d at 795. The court held that the taxpayer had not substantially complied "because its tax returns contained nothing to alert the Commissioner" that an election had been made. *Id.* at 783. In the second case, *Young,* the court also found part of the "essence" of the relevant election statute to be notice to the Commissioner. 783 F.2d at 1206 ("The essence of the statute, then, is that a taxpayer unequivocally communicates his election and binds himself to his decision...."); *see also Atlantic Veneer,* 812 F.2d at 161 ("The common denominator among the cases seems to be that, at a minimum, the taxpayer needs to provide the Service with sufficient notice of his intent to make the election.").

Petitioners do not question that the essence of the election requirement is notice to the Commissioner, but they attempt to analogize their case to *Knight–Ridder* and *Young* by characterizing their manner of election as "so subtle that [the Commissioner] might easily have overlooked the calculation employed." Appellants' Brief at 11. We reject this argument and agree with the Tax Court, which observed that "[i]n contrast [to the taxpayers in *Knight–Ridder* and *Young* ], petitioners provided a supplemental worksheet in their 1977 Federal income tax return which clearly and

---

6. The present section 170(b)(1)(C) was codified at section 170(b)(1)(D) at the time the regulations were adopted.

unambiguously indicates that their charitable contribution deduction was being calculated pursuant to [section] 170(b)(1)(C)(iii)." *Woodbury*, 55 T.C.M. (CCH) at 1133 n. 7. We hold that petitioners provided the Commissioner with adequate notice of their election and that a valid election was thus made.

■ Petitioners next contend that even if their election of the fifty-percent method was valid, they nevertheless should be able to file amended returns in accordance with the thirty-percent method since their initial election was revocable. Specifically, petitioners urge us not to apply the "doctrine of election" as set out in *Pacific National Co. v. Welch*, 304 U.S. 191, 58 S.Ct. 857, 82 L.Ed. 1282 (1938), to elections under section 170(b)(1)(C)(iii). Since *Pacific National* did not address itself to the charitable contribution section in question here, they argue, it should not have precedential value for elections under that section. They further argue that the administrative burden of revocable elections to the Internal Revenue Service would be minor, and that neither the legislative history nor canons of statutory construction suggest that Congress intended section 170(b)(1)(C)(iii) to be irrevocable.

In *Pacific National*, the taxpayer had filed its tax returns according to the deferred payment method, but later attempted to file a claim for a refund based upon a recalculation of its profits under the installment method. The Supreme Court refused to allow this, holding that

"[c]hange from one method to the other ... would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws.... There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method."

*Pacific Nat'l*, 304 U.S. at 194, 58 S.Ct. at 858; *see also, Keeler v. Commissioner*, 180 F.2d 707, 710 (10th Cir.1950).

The rule of *Pacific National* "is often regarded as the fundamental authority for the development of this law" and it has enjoyed widespread application. *Grynberg v. Commissioner*, 83 T.C. 255, 261 (1984) (quoting *Estate of Stamos v. Commissioner*, 55 T.C. 468, 473 (1970)). It was applied specifically to section 170(b)(1)(C)(iii) by the Tax Court in *Grynberg*, a case also involving taxpayers who, having initially elected the fifty-percent method, later wanted to revoke that election. The court found in *Grynberg* that the two elements of the doctrine of election had been met, that is, there had been a free choice between two or more alternatives and there had been an overt act by the taxpayer communicating the choice to the Commissioner. Once the taxpayer makes this elective choice, the court held, " 'he is stuck with it.' " *Grynberg*, 83 T.C. at 261 (quoting *Roy H. Park Broadcasting, Inc. v. Commissioner*, 78 T.C. 1093, 1134 (1982)).

■ Our holding today does not preclude us from permitting an amended return "where the taxpayer desires to correct errors or miscalculations in [the] original return." *Keeler*, at 710. Nor are we prevented from allowing revocation of an election where the taxpayer, in good faith, erred by making an improper or impermissible choice. *See Scallen v. Commissioner*, 877 F.2d 1364, 1373–74 (8th Cir.1989); *Mamula v. Commissioner*, 346 F.2d 1016, 1018–19 (9th Cir.1965); *see also Grynberg*, 83 T.C. at 261–62 (discussing the limited exceptions to the doctrine of election). But where, as in this case, the taxpayer's initial election later becomes, through hindsight, less financially advantageous than some other option, the improvident election does not entitle the taxpayer to revoke that election. *See, e.g., Keeler*, 180 F.2d at 710.

Neither the legislative history nor the canons of statutory construction to which petitioners refer us convince us that Congress intended an election under section 170(b)(1)(C)(iii) to be freely revocable. *See Woodbury*, 55 T.C.M. (CCH) at 1133–34. Nor do we agree that the administrative burden of allowing freely revocable elections would be "minimal." Accordingly,

we hold that petitioners elected a permissible method of calculating their charitable contribution deduction and are bound by their election to employ that method of calculation.

The judgment of the Tax Court is AFFIRMED.