**In re AMERICAN FREIGHT SYSTEM, INC., Debtor.**

**Bankruptcy No. 88–41050–11.**

United States Bankruptcy Court, D. Kansas.

Nov. 21, 1994.

---

James J. Long, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for IRS.

Kimberly Shell Zellmer, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for debtor.

John Foulston, U.S. Trustee, Wichita, KS.

## MEMORANDUM OF DECISION ON SUMMARY JUDGMENT MOTIONS

JAMES A. PUSATERI, Chief Judge.

This matter arises from the debtor's objection to a proof of claim filed by the United States on behalf of the Internal Revenue Service. It is now before the Court on opposing motions for summary judgment. The IRS is represented by James J. Long, Trial Attorney in the Tax Division of the Department of Justice and Lee Thompson, United States Attorney for the District of Kansas. The debtor is represented by Kimberly A. Shell of Hillix, Brewer, Hoffhaus, Whittaker & Wright of Kansas City, Missouri.

The ultimate question presented is whether the debtor owes $276,622.50 assessed against it for highway use taxes related to a number of trucks it owned. To resolve this question, the Court must decide the following issues: (1) whether it was reasonable for the debtor to apply for a suspension of the tax on the trucks since it had stopped operating and intended to sell them; (2) whether the debtor properly completed the form required to request a suspension of the tax, or at least substantially complied with the requirements for requesting the suspension; and (3) whether the debtor's failure to include certain information on a form it was required to give the transferee when it sold a truck makes the debtor liable for the tax on such trucks.

### FACTS

The parties agreed the following facts are uncontroverted.

1. Debtor is a trucking company located in Sioux Falls, South Dakota, with its principal offices in Overland Park, Kansas.

2. On August 16, 1988, debtor filed for protection under Chapter 11 of the Bankruptcy Code.

3. On August 19, 1988, debtor represented to the Court in a cash collateral order that it intended "to dispose as soon as practicable of a substantial portion of [its] assets, including tractors and trailers. . . ."

4. On or about August 30, 1988, debtor filed IRS Form 2290, a "Heavy Vehicle Use Tax Return." This return covered the tax period July 1, 1988 through June 30, 1989.

5. On or about September 30, 1988, debtor filed an amended Form 2290. This return covered the same tax period referred to in paragraph 4.[1]

6. On the returns, debtor listed 425 vehicles under category "W" as "tax-suspended vehicles" on which debtor sought to suspend the heavy vehicle highway use tax pursuant to 26 U.S.C.A. § 4483(d)(1)(A).

7. The heavy vehicle highway use tax will be suspended for the taxable period if the owner of the vehicle reasonably expects that during the current tax period, the vehicle will be used less than 5,000 miles on public highways and the owner furnishes such information as IRS forms or regulations require with respect to the expected use of the vehicle.

8. To claim the suspension from tax, the owner of the vehicle must furnish on the first Form 2290 such information as is required by the IRS in order to support the suspension of the tax. Specifically, this form requires the taxpayer to complete and sign the "Statement(s) in Support of Suspension of Tax" section[2] at the top of page two of the form, and list by vehicle identification number the vehicles the owner expects will be used on the public highways for 5,000 miles or less.

9. Debtor attached to the returns referred to in paragraphs 4 and 5 a separate list which reflected the vehicles on which it claimed the suspension of highway use tax, including the vehicle number, serial number, category, and the state of registration.

10. On both returns, debtor failed to execute the "Statement(s) in Support of Suspension of Tax."

11. If the heavy vehicle highway use tax is suspended for the tax period in issue and that vehicle is transferred, the transferor will not be liable for any tax on the vehicle if the transferor furnishes a statement to the transferee which contains the transferor's name, address, taxpayer identification number, the vehicle identification number, the date of the transfer of the vehicle, the number of miles the vehicle had been used on public highways during the tax period, the odometer reading, and the name, address, and taxpayer identification number of the transferee.

12. Of the 425 vehicles referred to in paragraph 6, all were sold or returned to lessors during the tax period in issue. Specifically, 126 vehicles were sold in November 1988, 144 vehicles were sold in December 1988, 69 vehicles were sold in January 1989, 40 vehicles were sold in February 1989, and the remaining 43 vehicles were returned to the lessors.[3]

13. All but one of these vehicles had been used on the highways during the current tax period when debtor filed the tax returns in issue.

14. Only 66 of the transferees of these vehicles furnished all the information that was required as noted in paragraph 11. The remaining transferees were furnished with all the information except for their own taxpayer identification numbers.

### DISCUSSION AND CONCLUSIONS

■ The Court's understanding of the applicable statutes and regulations as they pertain to this case is as follows. *See 26 U.S.C.A. §§ 4481 to 4483*[4]; *26 C.F.R. §§ 41.0–1 to 41.7805–1 (1992).* Owners of certain heavy vehicles are required to pay an annual federal tax on each vehicle, called the "Highway Use Tax." The tax year runs

---

1. The first return reported tax owed on 1,110 vehicles and sought suspension for 440; the second reported tax owed on 54 and sought suspension for 39. The parties have not made clear how the second "amends" the first, or how the two together suspend the tax on the number of vehicles stated in paragraph 6. However, these questions need not be answered since the parties have agreed on the total number of tax-suspended vehicles.

2. Although the parties agreed this section is to be signed, as explained below, a reasonable reading of the form may not require a signature in this section to claim the suspension.

3. These numbers total 422, but the Court's ruling moots this discrepancy.

4. These statutes have been amended twice since the time period at issue, but only to extend their effective dates. *Act of Nov. 5, 1990, Pub.L. No. 101–508, 1990 U.S.C.C.A.N. (104 Stat.) 1388–426 to 427; Act of Dec. 18, 1991, Pub.L. No. 102–240, 1991 U.S.C.C.A.N. (105 Stat.) 2203.*

from July 1 to June 30, and for vehicles owned and used in July, the tax is due on August 31. However, the owner may seek a suspension of the tax for each vehicle it reasonably believes will be driven 5,000 miles or less during the tax year. Owners report the tax owed or request a suspension by filing a "Heavy Vehicle Use Tax Return," IRS Form 2290. The tax year in dispute here is the one beginning on July 1, 1988. The parties have supplied the Court with only the 1988–89 version of Form 2290, and this discussion assumes the details of the form remained the same for the 1989–90 tax year.

On Form 2290, owners report the number of vehicles owned in various categories determined by weight or in category "W" for "tax-suspended vehicles." Tax-suspended vehicles are to be listed on page two of the form in item 1 under a section labelled "Statement(s) in Support of Suspension of Tax," and in part II of schedule 1 to the form. If a tax-suspended vehicle turns out to be driven more than 5,000 miles during the tax year, the owner must amend its return and pay the tax in the month immediately following the month in which the mileage exceeded 5,000. If a tax-suspended vehicle remains under the 5,000 mile limit for the full year, the owner is to list it in item 2 of the "Statement(s)" section on the next year's return; the prior year's suspension then becomes an exemption. Of the three items in the "Statement(s)" section, only this one directs the taxpayer to sign in the signature space provided under the items.

If during the year the owner transfers a tax-suspended vehicle to another entity, it may exempt itself from the tax by doing two things. First, when transferring the vehicle, the owner must give the transferee a document setting forth the owner's name, address, and taxpayer identification number, the vehicle's identification number, the date of the transfer, the number of miles the vehicle has been used on the public highways during that tax year, the odometer reading at the time of the transfer, and the name, address, and taxpayer identification number of the transferee. The transferee is required to file a copy of this document with a Form

2290 return in the month following the transfer, but the owner is not required to submit the document to the IRS. Second, the owner is to report the transfer in item 3 of the "Statement(s) in Support of Suspension of Tax" section of the next year's return, stating the name of the transferee, the date of the transfer, and that the vehicle's identification number was listed on a prior return as eligible for the suspension. The owner is also to declare that the vehicle was still eligible for tax-suspension at the time of the transfer. Performance of these two tasks makes the owner exempt from the prior year's tax for that vehicle.

In 1988, the debtor filed one Form 2290 in August and another in September, listing in attachments the vehicles which it believed would not be driven in excess of 5,000 miles. It reported owing the tax on over 1,100 vehicles and claimed the suspension for less than 500. By the time the returns were filed, the debtor had filed a chapter 11 bankruptcy proceeding and had determined that it was going to sell all its vehicles. It was no longer in business and thus had a reasonable belief that it would not cause the tax-suspended vehicles to be driven in excess of 5,000 miles. Since the debtor could not know to whom a vehicle would be sold or how the buyer would actually use it, the debtor could only speculate whether the vehicle would be used enough to make the owner liable for the highway use tax.

■ For tax-suspended vehicles, the statute and regulations give the owner three options: (1) file a new Form 2290 and pay the tax once the vehicle has been driven more than 5,000 miles for the year; (2) report on its Form 2290 for the following year that the vehicle was in fact driven less than 5,000 miles for the year, and so complete the exemption from the tax for the previous year; or (3) transfer the vehicle with a document containing certain information and report the transfer on the owner's next Form 2290 return, and thus become exempt from the tax without regard to the transferee's use of it. *26 U.S.C.A. §§ 4483(d); 26 C.F.R. § 41.4483–3.* It appears that the statute was intended to allow an owner to claim a suspension of the tax so long as it legitimately

believed it would not cause a vehicle to travel over 5,000 miles, even though the owner intended to transfer the vehicle and the transferee was likely to use it on the highways for more than 5,000 miles. In this situation, the tax burden is simply shifted to the transferee. The Court concludes that the debtor's declaration was reasonable under the circumstances.

The IRS claims that even if the request for suspension was reasonable, the debtor did not properly fill out Form 2290 and therefore did not obtain a suspension. The deficiency the IRS relies on is the debtor's failure to sign the return in the signature space provided under the "Statement(s) in Support of Suspension of Tax" section. However, the debtor's agent did sign the first page of the return in the appropriate place under the following language: "Under penalties of perjury, I declare that I have examined this return, and the accompanying schedules and statements, and, to the best of my knowledge and belief, they are true, correct, and complete." The Court concludes that this signature adequately verifies the contents of the return and supporting documents. In addition, as indicated above, only one of the three items in the "Statement(s)" section of the form directs the taxpayer to sign in the space provided, and it is not the item for reporting tax-suspended vehicles for the current year. Since the item that asks for a signature did not apply to the debtor and the first page of the return required the debtor to verify all the information reported with the return, the Court believes the debtor could reasonably have concluded no signature was required under the "Statement(s)" section and certainly should not be punished for reaching this conclusion by losing the tax-suspension benefit.

Even if the second signature was somehow required by the form, the debtor's intent to suspend the tax on many of its vehicles is made clear by its insertion of a number in the box for "Number of vehicles" in the tax-suspended vehicle category, category W, and submission of a list of trucks identified by vehicle number, serial number, category (all "W"), and state of registration. The Court believes this clear communication of the

debtor's intent constitutes substantial compliance with the requirements of Form 2290. *See Woodbury v. Commissioner, 900 F.2d 1457, 1460–61 (10th Cir.1990) (notice to IRS is essence of election of differing tax treatments and substantial compliance is sufficient if IRS has notice); American Air Filter Co., Inc., v. Commissioner, 81 T.C. 709, 719–20 (1983) (stating factors for determining whether substantial compliance with IRS regulations entitles taxpayer to claimed tax treatment).*

The IRS's last argument is that the debtor failed to satisfy the requirement to supply a document with specified information to many of the transferees of its vehicles, and therefore owes the tax on those vehicles. The IRS does not claim that the debtor's Form 2290 for the year after the suspension year was not filed or was insufficient, just that an inadequate transfer document was supplied to many transferees. The only problem the IRS identifies with these documents is the debtor's failure to include the transferee's employer identification number on them.

The exemption statute, *26 U.S.C.A. § 4483(d)(4),* and the IRS regulations require the owner of a tax-suspended vehicle who is transferring it to supply the transferee with a document containing certain information. The transferring owner must also supply certain information on its next annual Form 2290, but not the transferee's employer identification number. The transferee is required to file a Form 2290 for its newly-acquired vehicle not later than the month following the month in which the transfer took place, and is to attach a copy of the document provided by the former owner. If the vehicle will be used for more than 5,000 miles in the year, the transferee will owe the tax.

Under the circumstances, the Court concludes that the failure to include the transferee's employer identification number on the transfer document supplied to the transferee for ultimate filing with its Form 2290 is not an omission that should make the transferring owner liable for the tax. The transferee could easily add its own identification number to the document and, at any rate, would

include the number on the Form 2290 which accompanies the document to the IRS. The statute and regulations make clear that the tax should fall on the owner who uses the vehicle enough on the highways to incur the tax. The Court cannot agree that the debtor's failure to provide its transferees with their own identification numbers should alter this result. The Court believes the debtor substantially complied with the requirements, and so should be exempt from the tax on the transferred vehicles. *See Woodbury and American Air Filter, supra.* If any tax is owed but not paid on any of the transferred vehicles, the transferee is the party responsible for its payment.

For these reasons, the Court concludes the debtor's motion for summary judgment should be granted. The IRS's claim for the highway use tax will be disallowed.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.