Jean D. TRUE, Individually and as Personal Representative of the Estate of Henry A. True, Jr.; Henry A. True, III and Karen S. True; Diemer D. True and Susan L. True; and David L. True and Melanie A. True, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 00–CV–1014–B.

United States District Court, D. Wyoming.

Feb. 28, 2001.

Richard E. Day, Williams, Porter, Day & Neville, Casper, Emily A. Parker, Thompson & Knight, Dallas, TX, for Plaintiff.

Nicholas Vassallo, Assistant United States Attorney, Cheyenne, W. Carl Hankla, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D. C., for Defendant.

### ORDER

BRIMMER, District Judge.

Plaintiffs bring this lawsuit seeking refunds of federal income taxes paid for the calender years of 1991 and 1992. The matter is currently before the Court on the parties' cross motions for summary judgment. After reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### *Statement of Jurisdiction*

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1346(a)(1). Venue is proper under 28 U.S.C. § 1391(e).

### *Background*

The following facts are undisputed unless otherwise indicated:

Plaintiffs are the partners of the True Oil Company ("TOC"), a Wyoming general partnership. TOC owns fractional working mineral interests in sundry parcels of land around the country. Over time, TOC acquired additional fractional working interest in several parcels in which it already owned a working interest.

Under the Internal Revenue Code ("I.R.C."), Title 26 of the United States Code, certain depletion allowances or deductions are permitted on fractional working mineral interests. Plaintiffs availed themselves of the depletion allowance on their personal income tax returns during several years, including 1991 and 1992. For those properties in which TOC acquired more than one fractional working interest, Plaintiffs treated such interests as separate properties in order to maximize the depletion allowances approved by the I.R.C. In fact, "[s]ince 1973, whenever TOC has separately acquired more than one fractional working or operating interest in a particular tract or parcel of land, TOC and Plaintiffs have consistently treated each such interest as a separate property for depletion purposes on their federal income tax returns." (United States' Br. in Supp. of Mot. For Summ. J., Undisputed Facts ¶ 9.)

Despite this separate treatment, Plaintiffs never filed a formal election statement under Section 614. Instead, Plaintiffs attached to their tax returns certain schedules which identified the amount of depletion allowances claimed for each fractional working interest. Each schedule listed the lease name, the assigned lease number, and a depletion amount for each separate interest. TOC assigned a lease number according to the following system: the first two numbers identify the state where the lease is located; the second two numbers identify the county; and the last five numbers represent the interest which TOC acquired.

In April 1995, the Commissioner of Internal Revenue ("Commissioner") notified the Plaintiffs of deficiencies on their tax returns for 1991 and 1992. A portion of the alleged deficiencies were based on improper depletion allowances taken on properties in which TOC owned multiple fractional working interests. The Commissioner alleged that Plaintiffs had treated those properties separately in order to obtain greater depletion allowances without first making a proper election as required by the I.R.C. Plaintiffs paid the alleged deficiencies along with penalties and interest and thereafter filed for a refund claiming they had substantially complied with the requisite election provisions.

Plaintiffs' claims were rejected and this suit followed.

This controversy involves the question of whether Plaintiffs, in taking their depletion allowances on various oil and gas interests, properly elected to treat several of such interests as separate properties under I.R.C. § 614(b). The Defendant United States of America ("Government") contends that Plaintiffs were required to make a proper election before being allowed to treat the multiple working interests as separate properties. Plaintiffs contend that no election is required, but that even if an election were required, they substantially complied with its requirements. The parties both move for summary judgment and agree that there are no material issues of fact which preclude summary judgment.

### Standard of Review

"Summary judgment is appropriate if the record reveals that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). The Court views the evidence in the light most favorable to the party opposing summary judgment. *Id.* "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997). "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins,* 81 F.3d at 990.

### Analysis

The parties' motions for summary judgment address identical issues. Rather than addressing each motion individually, the Court will address the parties' contentions as they apply to the issues presented by the briefs: (1) whether an election is required under I.R.C. § 614(b), and if so, (2) whether the Plaintiffs substantially complied with such a requirement.

### A. Election requirement

Plaintiffs argue they were not required to make an election under Section 614 of the I.R.C. in order to treat fractional working interests in the same parcel as separate properties for depletion allowance purposes. The Government contends that the plain language of Section 614 provides that such fractional working interests are treated as one property unless a proper election is made in accordance with I.R.C. § 614(b)(4).

Before addressing the substantive aspects of whether an election is required under Section 614, the Court must first address the Government's argument that Plaintiffs are barred from raising this argument by the Doctrine of Variance. Under this Doctrine, a taxpayer maintaining a suit for a refund may not rely on any grounds for recovery that were not set forth in its refund claim. *Angle v. United States,* 996 F.2d 252, 254 (10th Cir.1993). "These requirements serve to apprise the Internal Revenue Service of the nature of the claim and its underlying facts, so that it can make a thorough administrative investigation and determination, correct any errors, and limit the scope of any ensuing litigation to those issues which have been examined and which it is willing to defend." *True v. United States,* 190 F.3d 1165, 1171–72 (10th Cir.1999).

■ Plaintiffs contest the application of the Doctrine of Variance arguing that the issues presented by the lawsuit need only be "reasonably encompassed by those set out in the claim for refund." *Herrington v. United States*, 416 F.2d 1029, 1032 (10th Cir.1969). It is undisputed that Plaintiffs' refund claim was based solely on a claim of substantial compliance with the election requirements. Now, however, Plaintiffs argue that the Section 614 election provisions do not even apply. These issues are starkly different from one another. Therefore, the Court finds that Plaintiffs' refund claim does not set forth grounds which reasonably encompass an attack on the very provision under which it once claimed substantial compliance. As a result, this Court lacks jurisdiction to hear Plaintiffs' contention that it was not required to make an appropriate election. *See True*, 190 F.3d at 1171.

■ Even if the Court were to find that it had jurisdiction to hear Plaintiffs' arguments, they would be deemed to be without merit. For purposes of computing a depletion allowance, the term "property" is defined as "each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land." I.R.C. § 614(a). However, special rules apply to operating mineral interests in oil and gas wells and deposits: "In general.— Except as otherwise provided in this subsection—(A) all of the taxpayer's operating mineral interests in a separate tract or parcel of land shall be combined and treated as one property." I.R.C. § 614(b)(1). The Court will not attempt to recreate Plaintiffs' attempts to avoid the apparent import of this provision. Instead, Plaintiffs' arguments may be summarized to say

that Section 614(b)(1)(A) only combines interests in separate mineral deposits. However, the Court has considered the matter and finds that this strained interpretation is contrary to the statute and is also rebutted by the explanations contained in the Regulations:

> If a taxpayer has more than one operating mineral interest in oil and gas wells in one tract or parcel of land, he may elect to treat one or more of such interests as separate properties for taxable years beginning after December 31, 1963. Any such interests with respect to which the taxpayer does not so elect shall be combined and treated as one property.

Treas. Reg. § 1.614–8(a). Neither the I.R.C., nor the applicable regulations, attempt to define "operating mineral interest" in a way which would confine the combining effect of Section 614(b)(1) to separate interests in mineral deposits as Plaintiffs suggest. Such an interpretation would merely obfuscate an already intimidating and complex area of the law. The Court, as an alternative finding, rejects Plaintiffs' arguments that it was not required to file an election under Section 614 of the I.R.C.

**B. Compliance**

■ Plaintiffs next argue they did in fact comply with the applicable election requirements. The Government contends Plaintiffs failed to file a formal election statement allowing them to treat various operating interests separately for depletion allowance purposes under I.R.C. § 614(b)(2).[1]

Section 614(b)(4)(A) provides: "[a]ny election provided in [Section 614(b)(2)]

---

1. The dispute surrounding Plaintiffs' purported election is limited solely to the manner in which it was made. The parties do not contend that any dispute lies as to when it was

made, *see* Treas. Reg. § 1.614–8(a)(3)(i), or its binding effect, *see* Treas. Reg. § 1.614–8(a)(3)(iv).

shall be made for each operating mineral interest, in the manner prescribed by the Secretary by regulations." Accordingly, the Regulations define the election requirements:

> (ii) Election; how made. Any election under this paragraph shall be made by a statement attached to the income tax return of the taxpayer for the first taxable year for which the election is made. This statement shall identify by name, code number, or other means the operating mineral interests within the same tract or parcel of land which the taxpayer is electing to treat as separate properties or in combination, as the case may be. The statement shall also identify by name, code number, or other means the tract or parcel and shall set forth the facts upon which its treatment as a single and entire tract or parcel is based. See paragraph (a)(3) of § 1.614–1. However, if the taxpayer is electing to treat all of his operating mineral interests in a tract or parcel as separate properties, a blanket election with respect to all of such interests in that tract or parcel which are owned by the taxpayer at the time the election is made will suffice and only the tract or parcel itself need be so identified. The taxpayer shall maintain and have available records and maps sufficient to clearly define the tract or parcel and all of the taxpayer's operating mineral interests therein.

Treas. Reg. § 1.614–8(a)(3). Plaintiffs contend that they complied with this provision by effecting a valid "blanket election." The Government, on the other hand, argues that a valid election is only achieved by attaching a separate property election statement. It is undisputed in this case that no such formal statement was ever attached to any of the tax returns at issue in this case. Therefore, since literal compliance with the election requirement was not achieved, the Court must address whether Plaintiffs substantially complied with the election provision. *See Woodbury v. Comm'r of Internal Revenue,* 900 F.2d 1457, 1460 (10th Cir.1990).

The first step in the Court's analysis of substantial compliance is to determine "whether the requirements are mandatory in nature, or merely procedural details established to facilitate the Commissioner's administration of the Internal Revenue Code." *Id.* Election requirements similar to those at issue in this case have been found to be procedural details. *See Woodbury v. Comm'r of Internal Revenue,* 55 T.C.M. (CCH) 1131 (1988), *aff'd,* 900 F.2d 1457. In *Woodbury,* the relevant code provision stated that elections must be "[made] in such manner as the Secretary prescribes by regulations." 900 F.2d at 1459 (citations omitted). The regulations further provided that the election was to be "made by attaching to the income tax return for the election year a statement indicating that the election ... is being made." *Id.* (citation omitted). The court noted that the essence of the election requirement was to provide notice to the Commissioner. *Id.* Therefore, a valid election was obtained despite the absence of strict compliance with the regulation's literal election requirements. *Id.* at 1460–61.

Here, as in *Woodbury,* I.R.C. § 614(b)(4)(A) provides that elections shall be made in a manner prescribed by the regulations. Just as in *Woodbury,* the regulations in turn require an election statement to be attached to the tax return. Treas. Reg. § 1.614–8(a)(3). Therefore, the Court finds the essence of the election requirements applicable to Section 614 is to provide notice to the Commissioner. *See Woodbury,* 900 F.2d at 1460.

In light of Plaintiffs' failure to strictly comply with the regulation's election provisions, the Court must next determine

whether Plaintiffs "provided the Commissioner with adequate notice of their election." *Id.* at 1461. In *Woodbury*, the taxpayer attached a separate worksheet to its tax return which calculated its charitable deduction. *Id.* at 1459. Under the relevant tax provision, the taxpayer was entitled to choose between a thirty percent and a fifty percent method when calculating its charitable deduction. *Id.* at 1458. However, the taxpayer failed to file a formal election statement as required by the regulations. *Id.* The taxpayer then attempted to alter its election in subsequent years by arguing that it had not made a valid election to utilize the fifty-percent method. *Id.* at 1459. The court disagreed with the taxpayer and held that the taxpayer had "provided the Commissioner with adequate notice of their election and that a valid election was thus made." *Id.* at 1461.

The undisputed facts of this case reveal that Plaintiffs have consistently treated additionally acquired interests as separate properties for depletion purposes. For all relevant years, Plaintiffs attached to their tax returns schedules relating to the computation of depletion on each of their fractional working interests for which depletion allowances, among other deductions, were available. Each schedule lists the lease name, the assigned lease number, and a depletion amount for each separate interest. TOC designed a system by which lease numbers were assigned: the first two numbers identify the state where the lease is located; the second two numbers identify the county; and the last five numbers represent the interest which TOC acquired. The Government contends that it was not previously aware of this numbering system and that such an explanation did not accompany the Plaintiffs' tax returns. However, this numbering system, even without explanation, reveals an obvious categorizing system which tends to show that Plaintiffs were treating various interests as separate properties. The Court finds these schedules reveal that each mineral interest was being treated separately for depletion allowance purposes.

The Government argues that Plaintiffs' returns must provide the Commissioner with clear and unambiguous notice of the election. Indeed, the *Woodbury* court found substantial compliance in a case where a supplemental worksheet accompanying the tax return "clearly and unambiguously indicated" an election. *Id.* at 1461. However, the Court does not believe that this statement can be construed to enunciate the proper test for substantial compliance. Instead, the court used the "clearly and unambiguously" language to emphasize that the taxpayer had given adequate notice to the Commissioner of its election. *Id.* The Court did not conclude that clear and unambiguous notice was required, but rather that there must be "adequate notice." *Id.*

In addition, it is worthy to note that Plaintiffs' separate treatment of these various mineral interests has been consistent since 1973. *Compare id.* (taxpayer recalculated their charitable deduction in order to gain a larger overall deduction). Plaintiffs' attached schedules clearly indicated the depletion allowances which were being claimed for each separate mineral interest that was owned by the TOC Partnership. But for Plaintiffs' failure to comply with the formal election requirements, Plaintiffs were lawfully entitled to take the claimed depletion allowances.

Finally, Section 614 provides the rules applicable for defining mineral interests when computing depletion allowances. I.R.C. § 614(a). The election requirements of this section are designed to notify the Internal Revenue Service ("I.R.S.") of

how the taxpayer is treating its property when determining its depletion allowances. As articulated by Defense Counsel at the hearing, the purpose of the election requirement may fairly be construed to provide notice to the Internal Revenue Service and to allow them to thereby decide the scope of the audit. In other words, the election provision ensures the I.R.S. has an "opportunity to investigate and verify entitlement to the deduction." *Credit Life Ins. Co. v. United States,* 948 F.2d 723, 727 (Fed.Cir.1991). In this case, the I.R.S. had ample notice of the Plaintiffs' claimed deductions. The I.R.S. also had sufficient information relating to the lease numbers and the location of the properties to allow it to verify Plaintiffs' entitlement to those deductions. Therefore, the Court finds that Plaintiffs substantially complied with the Section 614 election requirements.

### Conclusion

For the above stated reasons, the Court finds Plaintiffs were required to file an election under I.R.C. § 614. The Court further finds the Plaintiffs substantially complied with those election requirements. Therefore, it is **HEREBY ORDERED** that:

1. Plaintiffs' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' motion is **GRANTED** as it pertains to Plaintiffs' substantial compliance with the election requirements referenced herein. Plaintiffs' motion is **DENIED** in all other respects;

2. Defendant's Motion for Summary Judgment is **DENIED.**