**John H. YOUNG and Carolyn J. Young, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 85–4185.

United States Court of Appeals, Fifth Circuit.

Feb. 26, 1986.

Edward D. Urquhart, Charles J. Escher, Tex., for petitioners-appellants.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, William S. Estabrook, George L. Hastings, Jr., Michael L. Paup, Chief, Appellate Sec., Fred T. Goldberg, Jr., Chief Counsel, IRS, Robert P. Ruwe, Director Tax Lit., Washington, D.C., for respondent-appellee.

Before POLITZ, HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Taxpayers appeal a United States Tax Court decision, 83 T.C. 831, that they failed to make an effective binding election, pursuant to section 172(b)(3)(C) of the Internal Revenue Code, to "carry forward" to 1977 rather than "carry back" to prior years their net operating loss for the 1976 tax year, resulting in a deficiency of $48,722.49 in their 1977 federal income taxes. Because the Tax Court correctly determined that taxpayers neither literally nor substantially complied with the statutory election requirement, we affirm.

### I

In their joint 1976 federal income tax return timely filed after allowable extensions on October 17, 1977, John H. and Carolyn J. Young reported their 1976 taxable income as "NONE." Attached to the

1976 Form 1040 was Form 4625, "Computation of Minimum Tax." On Line 11 of the form, which provided, "Enter amount of 1976 net operating loss carryover to 1977 (attach statement showing computation)," taxpayers entered "$131,334." No computation statement was attached, and the return contained no other information concerning taxpayers' 1976 net operating loss, or net operating losses from other years.

In 1980, after an audit of their 1976 return, taxpayers filed an Amended U.S. Individual Income Tax Return, Form 1040X, for 1976. Attached to the 1976 Form 1040X, as it was to the 1976 Form 1040, was Form 4625, Computation of Minimum Tax. On this form taxpayers entered $223,395 at Line 11, and a reference to "Statement I," which contained a recalculation of taxpayers' 1976 net operating loss and the following statement:

### ELECTION

In accordance with regulation section 7.0(d) taxpayer elects or has previously elected to forego the carryback period of the 1976 operating loss deduction.

Section 172(b)(3)(C) of the Internal Revenue Code [1] provides that in order to "carry forward" a net operating loss to offset income of a subsequent tax year without first "carrying back" such loss to the three prior tax years, a taxpayer must make an "irrevocable" election to that effect "by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss...." The election statement was included in the 1980 amended filing because the revenue agent who audited the original 1976 return did not agree that taxpayers had effectively elected in that return to relinquish the carryback period of their 1976 net operating loss. In 1980 taxpayers also filed an amended return for 1977, claiming the full $223,395 net loss carryover from the amended 1976 return as a carryforward to reduce their 1977 income.

The Commissioner of Internal Revenue determined a deficiency in taxpayers' 1977 tax liability because they failed to make a timely election under section 172(b)(3)(C) to relinquish the entire carryback period of their 1976 net operating loss. Under section 172(b)(1), the Commissioner concluded, taxpayers' 1976 net operating loss should have been carried back to the three preceding years before it was carried forward to 1977, and the failure to do so resulted in a tax deficiency for 1977 of $48,722.49.

Taxpayers petitioned the Tax Court for redetermination of the 1977 deficiency; the sole issue was whether they made an effective election for the 1976 tax year, enabling them to carry the entire 1976 loss forward to 1977. It was undisputed that the "election" filed with the amended return in 1980 was ineffective, since not made "by the due date ... for filing the taxpayer's return for the taxable year of the net operating loss...." 26 U.S.C. § 172(b)(3)(C). Taxpayers argued instead that they made an effective election in the original return on Line 11 of Form 4625 where they indicated that a 1976 net operating loss of $131,334 would be carried forward to 1977.

The Tax Court rejected this argument, concluding that the Form 4625 entry constituted neither literal nor substantial compliance with section 172(b)(3)(C)'s election requirement. The court held that the 1976 net operating loss had to be carried back to taxpayers' 1973, 1974, and 1975 taxable years before it could be applied to 1977, and accordingly upheld the deficiency in taxpayers' 1977 tax liability.

### II

Section 172 of the Internal Revenue Code allows a taxpayer who suffers a net loss in one taxable year to offset income of taxable years just before or after the year of net loss to mitigate the sometimes procrustean cut of the annual accounting system of taxation. *See Libson Shops, Inc. v. Koehler,* 353 U.S. 382, 386, 77 S.Ct. 990, 992, 993, 1 L.Ed.2d 924 (1957). Until 1976, a taxpayer had to carry back a net operat-

---

**1.** Designated at the time the initial 1976 return was filed as section 172(b)(3)(E).

ing loss to the previous three years before carrying it forward for five years; moreover, the loss had to be carried first to the earliest year and could be carried to succeeding years only to the extent not absorbed in the earlier years.

As part of the Tax Reform Act of 1976, Congress provided in section 172(b)(3)(C) that after December 31, 1975, a taxpayer entitled to a carryback period for a taxable year could relinquish it and carry the loss exclusively· forward to succeeding years. The statute directs that:

> Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for that taxable year.

26 U.S.C. § 172(b)(3)(C).

In accordance with the statutory mandate, the Treasury Department published Temporary Income Tax Regulations under the Tax Reform Act of 1976, T.D. 7459, 1977–1 C.B. 587. Section 7.0(d) of the Temporary Regulations, entitled "Various elections under the Tax Reform Act of 1976," prescribed the procedure for making elections with respect to numerous elective provisions added to the Code by the Act, including the election under section 172(b)(3)(C):

(d) *Manner of making election.* Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections described ... shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election.[2]

T.C. 7459, 1977–1 C.B. at 590.

### III

Taxpayers assert that Temporary Regulation 7.0(d) is necessarily vague, because it was to govern a large number of elections provided in the code. They argue that a separate election statement is not required by the regulation where the election is "otherwise provided" in the return or in a form accompanying the return, that their entry on Line 11 of Form 4625 should be considered as "otherwise providing" the election, and that the entry contained all the information required and literally complied with Temporary Regulation 7.0(d). Moreover, argue taxpayers, the regulation, unlike the statute, would permit an election to be made on an amended return, exactly as taxpayers did in 1980. While taxpayers concede that the statement of election in 1980 was made outside the statutory deadline, its timing complied with the *literal* wording of the regulation, thereby highlighting the regulation's ambiguity. Consequently, we are urged to examine the issue of whether the Line 11 entry on Form 4625 literally complied with the regulation

---

**2.** In addition to the temporary regulations, the 1976 instructions for Form 1040 state on page 11:

> Net Operating Loss.—If you lost money in a trade or business in 1976, you can subtract the loss from your 1976 income.
> . . . .
> If your losses were more than your income, the difference may result in a "net operating loss." Generally, you can use it to reduce your income for the three years before 1976

and the seven years after, OR YOU MAY ELECT to use it to reduce your income for the seven following years. If you decide to carry back the loss and are due a refund from the "carryback," you may use form 1045 to get a quick refund. *BUT if you elect to carry the loss forward instead, attach a statement to this effect on a timely filed return (including extensions). If you make such an election for 1976, it cannot be changed later.* [Emphasis added].

against the backdrop of the regulation's faulty wording, and resolve any question of literal compliance in taxpayers' favor.

The Commissioner responds that the "otherwise provided" language in the regulation refers only to those elections where a specific line, box, or other device for making the election is provided by the I.R.S. on the tax return or accompanying form. Because there is no entry on Form 1040 which specifically provides for a section 172(b)(3)(C) election, the Commissioner argues that the "otherwise provided" language is inapplicable in this case, and a separate statement, which taxpayers did not provide, was required for literal compliance with the regulation. Even accepting taxpayers' interpretation of the regulation that no separate statement is required when the taxpayer "otherwise provides" an election somewhere in his return, the Commissioner argues that the information included on Line 11 of Form 4625 failed to fulfill the requirements of the regulation, because it did not identify the number of the section under which the election was made, nor did it contain the word "election" or otherwise indicate that an "election" of any sort was being made.

We are persuaded that the Commissioner and the Tax Court were correct in determining there was no literal compliance with the regulation and section 172(b)(3)(C). Form 4625, "Computation of Minimum Tax," deals only with the computation of the minimum tax prescribed by section 56 of the Code. That section imposed a minimum tax of 15 percent on individuals with respect to certain enumerated tax preference items. Line 11 reflects the provisions of section 56(b)[3] which allow deferral of part or all of the minimum tax if the taxpayer incurred a net operating loss in the

taxable year, "*any portion of which ...* remains as a net operating loss carryover to a succeeding taxable year, ....*" 26 U.S.C. § 56(b)(1)(A) (emphasis added). Section 56 contains no provision for net operating loss carrybacks, as opposed to carryovers, in computing the minimum tax.

It is therefore possible for Line 11 on Form 4625 to contain an entry of a net operating loss carryover even though the net operating loss incurred for that year was carried back 3 years and only the unused portion of it remained as a carryover to subsequent years. Even if a taxpayer did include the entire net operating loss on Line 11, as taxpayers argue they did, nothing about the entry indicated their intent to forego the carryback period, and they remained free to later file an amended return redistributing their net operating loss over previous years. The Line 11 entry simply did not signify an "election" at all, much less literal compliance with the regulation.

Taxpayers respond that on its face the Line 11 instruction indicated that the *entire* net operating loss from the 1976 taxable year should be included, and that only after a "detailed analysis" of § 56(b)(1) does it become apparent that Line 11 refers not to the entire net operating loss for 1976, but only a portion of it. Therefore, they conclude, "the Commissioner should not be permitted to penalize taxpayers who have been misled into erroneously understanding that they were unequivocally indicating their total 1976 net operating loss." Were simple misreading of the Tax Code a valid defense to tax liability, however, we have no doubt that incompetency in providing accounting services would carry a premium. The Tax Court correctly held the

---

3. § 56. Corporate Minimum Tax

. . . .

(b) Deferral of tax liability in case of certain net operating losses.—

In general.—If for any taxable year a corporation—

(A) has a net operating loss any portion of which (under section 172) remains as a net operating loss carryover to a succeeding taxable year, and

(B) has items of tax preference in excess of $10,000, then an amount equal to the lesser of the tax imposed by subsection (a) or 15 percent of the amount of the net operating loss carryover described in subparagraph (A) shall be treated as tax liability not imposed for the taxable year, but as imposed for the succeeding taxable year or years pursuant to paragraph (2).

. . . .

entry of the loss carryover on the taxpayers' Form 4625 "by no stretch of the imagination" indicated an intent to forego the carryback period, and did not literally comply with the temporary regulations.

## IV

Taxpayers assert that even if their Form 4625 Line 11 entry did not literally comply with the requirements of Temporary Regulation 7.0(d), they have nevertheless substantially complied with the requirements of section 172(b)(3)(C) so that strict adherence to the regulation was unnecessary.

Although regulatory requirements that relate to the substance or essence of a statutory provision of the Internal Revenue Code must be strictly complied with, a line of cases from the United States Tax Court has established that "substantial compliance with regulatory requirements may suffice when such requirements are procedural and when the essential statutory purposes have been fulfilled." *American Air Filter v. Commissioner*, 81 T.C. 709, 719 (1983). In a number of cases the court has determined that a taxpayer has substantially complied with a statute of the tax code, even though he failed to follow the strict procedures for making an election as set forth in a regulation promulgated pursuant to the statute. *See, e.g., American Air Filter, id.; Taylor v. Commissioner*, 67 T.C. 1071 (1977); *Columbia Iron & Metal Co. v. Commissioner*, 61 T.C. 5 (1973). Where regulatory requirements relate to the substance or essence of statutes requiring elections, however, the court has rejected assertions of substantial compliance. *See, e.g., Penn-Dixie Steel Corp. v. Commissioner*, 69 T.C. 837 (1978); *Dunavant v. Commissioner*, 63 T.C. 316 (1974); *Valdes v. Commissioner*, 60 T.C. 910 (1973).

The primary inquiry, then, concerns the "essence" of section 172(b)(3)(C), and whether the election requirement relates to that essence or is merely procedural or directory. Taxpayers point us to the legislative history of the statute, which indicates that the statute was drafted out of

congressional concern that because of adverse economic conditions in the years just prior to 1976, many taxpayers would not generate sufficient income in existing carryover periods to enable them to use their large operating loss carryovers: "[i]n order to reduce the possibility that this problem will arise in the future, the committee has decided to provide a loss carryover option under which eligible business taxpayers *may elect a longer loss carryover in lieu of the loss carryback to which they are otherwise entitled."* S.Rep. No. 938, 94th Cong., 2d Sess. 198, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3439, 3629 [our emphasis]. Taxpayers argue that it is clear from this statement of legislative intent and from the plain language of the statute itself that the only condition or requirement of the statute is that the taxpayer be entitled to a carryback period under section 172(b)(1). Taxpayers were entitled to a carryback period in 1976, and seem to conclude that they thereby substantially complied with the statute, arguing that the requirement of an election statement is merely procedural.

If by this taxpayers mean that no election of any kind is essential to the statute, the argument can be dismissed out of hand; the plain language of the statute requires not only that a taxpayer be entitled to a net operating loss carryback, but also that he make an "irrevocable" election "to relinquish the entire carryback period with respect to a net operating loss for [the] taxable year...." 26 U.S.C. § 172(b)(3)(C). Were taxpayers' argument correct, every taxpayer with a net operating loss would automatically be held to have substantially complied with the statute without taking any steps to make an election or having desired to so elect at all.

Contrary to taxpayers' interpretation, the legislative history plainly indicates that the election requirement is of the essence of the statute. Before the Tax Reform Act of 1976, the statutory scheme required that a net operating loss be carried back before any unabsorbed excess could be carried forward. The legislative history indicates

that Congress intended to give taxpayers an option to exclusively carry forward net operating losses "in lieu of" first carrying them back as would otherwise be required. In providing this choice, Congress made it irrevocable; moreover, Congress required that it be made within the time allowed for filing the return in the year of loss. The statutory intent was to require the taxpayer, when making the election, to assume the risk that a carryback would later prove preferable. For example, if a taxpayer were to experience losses in succeeding years rather than the profits he expected when making the election, the irrevocability of his choice would prevent him from later changing course and carrying back a net operating loss to prior years as he might wish to do absent the election. The essence of the statute, then, is that a taxpayer unequivocally communicates his election and binds himself to his decision concerning the best use of his net operating loss.

That the statute requires some sort of binding election does not lead a fortiori to the conclusion that there could never be substantial compliance absent literal adherence to the requirements of Temporary Regulation 7.0(d). But taxpayers were unable to establish that they made an irrevocable election to forego the carryback period by a method other than that set forth in the regulation. Taxpayers urge that their Line 11 entry on Form 4625, the contemporaneous workpapers of their accountant, and their subjective intent in 1976, all establish that a binding election was made. Yet, none of these bound taxpayers in any way to their decision.

Taxpayers claim that when they filed their 1976 federal income tax return, it was obvious they would receive little or no benefit from carrying the 1976 net operating loss back to prior years, allegedly because their gross income in 1973 and 1974 consisted primarily of capital gains that would have consumed the 1976 net operating loss without any significant tax benefit. Furthermore, taxpayers argue, by the time the 1976 return was filed they knew that 1977 was going to be a highly profitable year.

Their accountant testified at trial that taxpayers intended to make the election, and taxpayers introduced his workpapers at trial to corroborate his testimony that only a carryforward of the 1976 net operating loss was intended and that a carryback was never considered.

But nineteen bishops swearing as to taxpayers' subjective intent would not carry this argument, because it contends for an irrelevant fact. The Commissioner did not have access to the taxpayers' workpapers and was not otherwise informed of their state of mind. The Line 11 entry on Form 4625 indicated only ambiguous intentions at best because taxpayers remained free to amend their 1976 return to redistribute their net operating loss over previous years. As stated in *Valdes v. Commissioner*, 60 T.C. at 915, a case with facts analogous to those here, taxpayers "filed nothing which, if the tables were turned ... would show that they were committed to that election and its statutory consequences." The irrevocable election necessary to fulfill the essence of the statute was simply never made.

Taxpayers cite several cases which they argue establish that a binding election may be made if facts, though unknown to the Commissioner from the face of the return, make it clear that the taxpayer intended the election. It is only by tortuous inference, however, that the cited cases support this proposition; at any rate, all are readily distinguishable from the present situation. In both the principal cases cited, *American Air Filter Co. v. Commissioner*, 81 T.C. 709 (1983), and *Taylor v. Commissioner*, 67 T.C. 1071 (1977), the court examined the relevant statutes and found that the election statements required by the applicable regulations were procedural or directory, and did not go to the essence of the statutes involved. Since an election statement was not prerequisite to substantial compliance in either case, neither asks whether taxpayers made a binding election by acts or omissions the Commissioner was unaware of.

*Columbia Iron & Metal Co. v. Commissioner*, 61 T.C. 5 (1973), also cited by taxpayers, did not involve the failure to provide an election; the applicable regulation required only that the taxpayer make the election by simply reporting a charitable contribution on his tax form, which taxpayer did. The sole issue in the case was whether the failure to provide information supplemental to the election itself in a separate statement, as required by the regulation, was procedural or of the essence of the statute. Because the return on its face contained the required election, *Columbia Steel* cannot support taxpayers' proposition that acts or omissions not communicated to the Commissioner may constitute a binding election.

Finally, taxpayers cite two other cases which did not involve substantial compliance at all. The first, *Reaver v. Commissioner*, 42 T.C. 72 (1964), which involved an election to report a sale on the installment method, is totally inapposite, since neither the statute nor regulation in issue required the taxpayer to elect the installment method in a timely filed return. The *Reaver* court held that under the statute in question, in contrast to the plain wording of section 172(b)(3)(C) here, the taxpayer was free to make the election in an amended return. In the other case, *de Conill v. Commissioner*, 34 T.C.M. (CCH) 485 (1975), taxpayers signed and timely mailed the formal election statement, but the Commissioner never received it. The Tax Court found as fact that the election had been mailed, and that taxpayers had done everything possible to make the election. There is no basis for a similar factual finding in the present case that taxpayers made a formal election.

We therefore reject taxpayers' assertion that they have substantially complied with section 172(b)(3)(C)'s requirement of an irrevocable election to exclusively carry forward their 1976 net operating loss. Whatever equities favoring the taxpayers in this particular case may exist, a finding of substantial compliance would contravene the will of Congress and would create an incentive for ambiguous statements on returns.

Since irrevocability is the essence of section 172(b)(3)(C), the decision of the tax court must be AFFIRMED.