T.C. Summary Opinion 2004-32


UNITED STATES TAX COURT



HAROLD AND DOREEN SILK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16009-02S.            Filed March 18, 2004.


Shawn A. Silk, for petitioners.

Frank N. Panza, for respondent.



ARMEN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

---

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
taxable years in issue.  All Rule references are to the Tax Court
Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income taxes, additions to tax, and accuracy-related penalties as follows:

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
|------|-----------|-----------------|--------------|
| 1996 | $12,707 | $920.25 | $2,541.40 |
| 1997 | 742 | 234.00 | 148.40 |
| 1999 | 5,222 | --- | 1,044.40 |

After concessions by the parties, the issue for decision by the Court is whether petitioners properly elected, under section 172(b)(3), to waive the carryback of a net operating loss (NOL) from 1995.

Background

Some of the facts have been stipulated, and they are so found. At the time that the petition was filed, petitioners resided in San Francisco, California.

During 1995, because of a downturn in the economy, petitioners incurred significant financial losses with respect to their real estate activities. Properties used by petitioners in their real estate activities were subject to possible foreclosure. Petitioners were also being sued by their financial institution.

Using tax software, Harold Silk (hereinafter referred to as petitioner) prepared what, at best, may be described as a 10-page "draft income tax return" for the 1995 taxable year (the so-called draft return). Petitioner allegedly mailed the so-called

draft return, together with a letter dated April 4, 1996, to respondent.

Petitioners no longer have a copy of the so-called draft return. However, at trial, petitioners introduced a copy of the April 4, 1996 letter that allegedly accompanied the so-called draft return.

Petitioner's April 4, 1996 letter stated, in part as follows:

> Our tax return for the tax year 1995 is being filed using TurboTax software and the return is printed using the program. The enclosed return is submitted, although there appears to be a flaw in the program that prevents us from representing operating losses for 1995 and working these losses into the calculations for correctly determining our tax obligations. * * * But we know we have sustained significant operating losses during 1995 and are now attempting to accurately ascertain their value and declare our intention to carry forward those losses into future tax years. When our data collection is complete, an amended return will be filed to correctly adjust our return(s).

Respondent did not receive either the so-called draft return or the April 4, 1996 letter.

On or about April 3, 1996, petitioners filed an application for an extension of time to file their 1995 return. The application was consistent with petitioners' actions taken in prior taxable years. Respondent received petitioners' application for extension.

At trial, petitioners introduced a "Receipt for Certified Mail" (the postal receipt), indicating postage paid of 32 cents

and bearing a U.S. Postal Service stamp dated April 3, 1996.

On March 27, 1997, petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for the 1995 taxable year (the 1995 return). The 1995 return did not purport to be an amended tax return. On an attached Form 8582, Passive Activity Loss Limitations, petitioners reported a total passive activity loss of $159,683. On line 17 of the 1995 return, petitioners claimed a rental real estate loss in the amount of $25,000. Petitioners did not submit with the 1995 return an election to forgo the carryback period with respect to an NOL, and nothing on the 1995 return itself suggested that petitioners intended to make such an election.

Petitioners jointly filed a Form 1040 for the 1996 taxable year (the 1996 return) on April 13, 2001. On line 21 of the 1996 return, petitioners claimed a loss in the amount of $59,032. A statement attached to the 1996 return indicated that such loss was an NOL "from a prior year".

In the notice of deficiency, respondent disallowed the $59,032 NOL carryover claimed by petitioners on their 1996 return. Respondent determined that petitioners had not elected under section 172(b)(3) to waive the carryback of the 1995 NOL. Petitioners contend that the April 4, 1996 letter allegedly mailed to respondent with the so-called draft return was a valid

election to waive the carryback period.[2]

Discussion

In general, the determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to show that the determinations are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[3]

Section 172(a) permits taxpayers to carry NOL deductions from one taxable year to another. In general, taxpayers who sustain NOLs must first carry such losses back 3 years, and, if unabsorbed in the earlier years, then the losses may be carried forward for as long as 15 years.[4] Sec. 172(b)(1)(A) and (2). However, taxpayers may elect to waive or relinquish the 3-year carryback period and only carry forward their NOLs. Sec. 172(b)(3). To make this election, the statute expressly requires taxpayers to file an election relinquishing the carryback period by the return due date, including any extensions of time, for the

_____

[2] Petitioners concede that if no valid sec. 172(b)(3) election was made, then their gross income for the 3 taxable years prior to 1995 would absorb the entire amount of the 1995 NOL.

[3] Sec. 7491(a) does not serve to place the burden of proof on respondent because petitioners failed to introduce credible evidence of an election to waive the carryback of the 1995 NOL. See Higbee v. Commissioner, 116 T.C. 438 (2001).

[4] For purposes of this case involving a 1995 net operating loss and a 1996 taxable year, we consider sec. 172(b)(1)(A) prior to its amendment by the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1082(a)(1) and (2), 111 Stat. 950.

taxable year in which the NOL was incurred. Id.; see sec. 301.9100-12T(b), Temporary Proced. & Admin. Regs., 57 Fed. Reg. 43896 (Sept. 23, 1992). Once made, the election is irrevocable. Id. The statute directs the Secretary to prescribe the manner in which taxpayers shall make the election. Id.

The Secretary promulgated the following regulation concerning a taxpayer's election to waive NOL carrybacks:

> [The election] shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election. [Sec. 301.9100-12T(d), Temporary Proced. & Admin. Regs., 57 Fed. Reg. 43896 (Sept. 23, 1992) (redesignating sec. 7.0, Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977)).]

The Court analyzed these statutory and regulatory requirements under section 172 in Young v. Commissioner, 83 T.C. 831 (1984), affd. 783 F.2d 1201 (5th Cir. 1986). In Young, the Court held that to be in substantial compliance with the election requirements, "as an absolute minimum, the taxpayer must exhibit in some manner, within the time prescribed by the statute, his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded by that section." Id. at 839.

Petitioners contend that the postal receipt is evidence that the so-called draft return and the April 4, 1996 letter were mailed to respondent and, thus, the election requirements under

section 172(b)(3) were satisfied.  We are not persuaded that the postal receipt demonstrates that the so-called draft return and the April 4, 1996 letter were mailed to, and received by, respondent.  First, the postal receipt bears a date earlier than the date of the April 4, 1996 letter.  Second, the postal receipt indicates postage paid of 32 cents.  The postal rate in effect for 1996 was 32 cents for the first ounce and 23 cents for each additional ounce.  Thus, the postal receipt does not reflect the proper amount of postage necessary to mail the 10-page so-called draft return and the April 4, 1996 letter.  Third, petitioner admitted that such letter may have been mailed to respondent with the so-called draft return, with the 1995 extension application, or independently of either document.  Finally, respondent did not receive either the so-called draft return or the April 4, 1996 letter.  Therefore, we cannot accept petitioners' claim that the postal receipt demonstrates that the so-called draft return and the April 4, 1996 letter were ever mailed to, or received by, respondent.[5]

On March 27, 1997, petitioners filed the 1995 return. However, petitioners did not attach any statement to the 1995

---

[5]  We note that the postal receipt does support the fact that petitioners mailed to respondent their 1995 extension application on Apr. 3, 1996.  Even if we were to assume arguendo that the letter was attached to the extension application, this would still be insufficient to satisfy the statutory and regulatory requirements under sec. 172(b)(3).

return that indicated their intention to make an election under section 172(b)(3) to waive the NOL carryback period.  Likewise, nothing on the 1995 return itself suggested that petitioners intended to make such an election.

Accordingly, we hold that petitioners did not satisfy the requirements under section 172(b)(3) for making a valid election to waive the NOL carryback period.  We therefore sustain respondent's disallowance of the NOL carryover claimed by petitioners on their 1996 return.

Reviewed and adopted as the report of the Small Tax Division.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.