T.C. Memo. 2010-78

UNITED STATES TAX COURT

DONALD WM. TRASK, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 25469-06, 6105-07.    Filed April 15, 2010.

Donald W. Trask, pro se.

Steven M. Roth, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent determined the following income

tax deficiencies and additions to tax and penalties:[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

|       |            | Additions to Tax | Penalties   |
| Year  | Deficiency | Sec. 6651(a)(1)  | Sec. 6662   |
|-------|------------|------------------|-------------|
| 2001  | $138,491   | $34,621.75       | $27,698.20  |
| 2002  | 110,939    | 27,734.75        | 22,187.80   |

The issues for decision are:

1.  Whether this Court has jurisdiction to redetermine petitioner's 2002 tax year liability.  We hold that we do not;

2.  whether petitioner was a real estate professional, and if so, whether he elected to treat his rental real estate activities as a single activity pursuant to section 469(c)(7)(A) for 2001.  We hold that petitioner was a real estate professional but did not properly elect his rental real estate activities as a single activity;

3.  whether petitioner is entitled to a net operating loss (NOL) carryover of $49,958 for 2001.  We hold that he is not;

4.  whether petitioner is entitled to a property tax deduction of $14,829 in 2001 with respect to a parcel of land in San Bernardino, California.  We hold that he is;

5.  whether petitioner is entitled to a deduction for "Repairs" claimed on his Schedule E, Supplemental Income and Loss, for 2001.  We hold that petitioner is entitled to 78 percent of the deductions claimed;

6. whether petitioner is entitled to amortization deductions on his 2001 tax return. We hold that he is not;

7. whether petitioner is liable for an accuracy-related penalty under section 6662 for 2001. We hold that he is; and

8. whether petitioner is liable for an addition to tax under section 6651(a)(1) for 2001. We hold that he is.

## FINDINGS OF FACT

The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in California at the time he filed his petitions.

Petitioner owned more than 30 rental properties during 2001. Petitioner had acquired these properties over the preceding 25 years.

Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for 1994 through 1999 and 2001. Petitioner aggregated his rental properties and reported his profits and losses on an aggregated basis. Respondent has no record of petitioner's filing a Federal income tax return for 2000.

Petitioner's 1995 return was examined, and a notice of deficiency was issued. Petitioner timely petitioned this Court for redetermination. On March 26, 2001, a stipulated decision was entered in docket No. 15363-97 in which petitioner agreed to an adjustment in income tax due for taxable year 1995 of $793 with no accuracy-related penalty. The stipulated decision

reflected respondent's disallowance of Schedule E losses in excess of the $25,000 passive activity loss limitation. This led to a decrease of $102,879 in the claimed passive loss. At trial petitioner claimed that he filed an amended 1996 return with a single activity election, but he failed to provide evidence that a 1996 amended return was filed. Respondent maintains there is no record of such a return being filed.

Petitioner filed a Schedule E with his 2001 Federal income tax return. Petitioner claimed a net loss of $27,340 for 2001 from his rental real estate activities. Respondent has stipulated that petitioner incurred expenses and depreciation of at least $395,165 for 2001. Petitioner aggregated his rental income and expenses as a single activity. Petitioner consistently followed this practice on the Schedules E attached to his 1995, 1998, 1999, 2001, 2002, and 2003 Federal income tax returns. Petitioner's 1996 and 1997 returns are not a part of this record; however, there is no evidence to suggest that petitioner calculated his losses and profits differently during those years.

Before 2001 petitioner held a mortgage on real property owned by Occidental Financial Group, Inc. (Occidental), in San Bernardino, California. Petitioner did not own shares in Occidental but lent $400,000 to the company in exchange for a deed of trust on the property. Petitioner lent the money to

guarantee an interest income stream for himself.  As owner of the property, Occidental was liable to pay the property tax but went bankrupt.  The bankruptcy court revised the terms of petitioner's note, and Occidental made a few payments; but the payments eventually ceased.  To avoid the county's seizure of the property, petitioner paid $14,829 of real estate property tax in 2001.

On September 12, 2006, respondent mailed petitioner a notice of deficiency for 2001 disallowing all claimed expenses from his rental real estate activities.  On December 1, 2006, respondent mailed petitioner a notice of deficiency for 2002.  On December 11, 2006, petitioner timely filed a petition with this Court for redetermination of the deficiency for 2001.  On March 13, 2007, petitioner filed a petition with this Court for redetermination of the deficiency for 2002.  Petitioner's petition was received by the Court on March 13, 2007, in an envelope bearing a U.S. Postal Service postmark dated March 6, 2007, 95 days after respondent mailed petitioner the notice of deficiency for 2002.  A trial was held on May 7, 2009, in Los Angeles, California.

OPINION

## I.  Petitioner's 2002 Tax Year

This Court's jurisdiction to redetermine a deficiency depends on the issuance of a valid notice of deficiency and a timely filed petition.  Rule 13(a), (c); Levitt v. Commissioner,

97 T.C. 437, 441 (1991). Section 6213(a) provides that a petition for redetermination of a deficiency determined by the Commissioner is timely filed if it is filed within 90 days after the notice of deficiency is mailed (or 150 days if the notice is mailed outside the United States). Petitioner's petition was received by the Court on March 13, 2007. The petition arrived at the Court in an envelope bearing a U.S. Postal Service postmark dated March 6, 2007--95 days after the notice of deficiency was mailed to petitioner. The 90-day period had expired on March 1, 2007. A petition received and filed by the Court after the expiration of the 90-day period may be deemed timely filed if it was timely mailed, as evidenced by the postmark date in conformity with section 7502 and the regulations promulgated thereunder.

We hold that the petition was not timely filed and thus this Court does not have jurisdiction to redetermine petitioner's 2002 tax liability, pursuant to either section 6213(a) or section 7502. Accordingly, we shall dismiss petitioner's petition in docket No. 6105-07 for 2002 for lack of jurisdiction on the ground that the petition was untimely.

II. Petitioner's 2001 Tax Year

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears

the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). The burden of proof on a factual issue that affects a taxpayer's liability for tax may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." Sec. 7491(a)(1). Petitioner has neither claimed nor shown that he complied with the substantiation requirements of section 7491(a). Therefore, the burden of proof remains on petitioner. See Rule 142(a).

A. Real Estate Professional

First we must decide whether petitioner elected for 2001 to treat his rental real estate activities as one activity under section 469(c)(7).

Petitioner claimed a loss of $27,340 from his rental real estate activities for 2001. Generally, section 469(a) disallows any passive activity loss. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities. Sec. 469(d)(1). Section 469(i) provides an

exception to the general rule that passive activity losses are disallowed. A taxpayer who "actively [participates]" in a rental real estate activity can deduct a maximum loss of up to $25,000 per year (subject to phaseout limitations) related to the activity. Sec. 469(i)(1), (2), and (3).

A passive activity includes the conduct of any trade or business in which the taxpayer does not materially participate. Sec. 469(c)(1). A rental activity generally is treated as a per se passive activity regardless of whether the taxpayer materially participates. Sec. 469(c)(2), (4). In establishing whether a taxpayer's real property activities result in passive activity losses, each interest in rental real estate is treated as a separate rental real estate activity unless the qualifying taxpayer makes an election to treat all interests in rental real estate as a single rental real estate activity. See sec. 469(c)(7)(A).

Petitioner on his 2001 income tax return claimed expenses of $356,119 and reported gross rental receipts on his Schedule C, Profit or Loss From Business, of $328,779, yielding a loss of $27,340. Petitioner claims he is entitled to deduct more than $25,000 from his Schedule E rental real estate activities for 2001. In order to receive this deduction, petitioner must satisfy three requirements: (1) He must establish that he qualifies as a real estate professional pursuant to section

469(c)(7)(B) for 2001; (2) he has elected under section 469(c)(7)(A) to treat his rental real estate activities as a single rental real estate activity at some point since 1994; and (3) he materially participated in the combined rental real estate activity. Respondent contends that petitioner failed to satisfy these requirements.

Under section 469(c)(7)(B), a taxpayer may qualify as a real estate professional and the rental real estate activity of the taxpayer is not a per se passive activity if:

>     (i)  More than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

>     (ii)  such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

See Fowler v. Commissioner, T.C. Memo. 2002-223; sec. 1.469-9(e)(1), Income Tax Regs.

Petitioner owned 33 properties in Southern California throughout 2001. Respondent argues that petitioner failed to prove that he performed more than 750 hours of service in real estate property trades or businesses in 2001.

"The extent of an individual's participation in an activity may be established by any reasonable means." Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). This Court has acknowledged that although

"reasonable means" is interpreted broadly, a postevent "ballpark guesstimate" will not suffice. See Lee v. Commissioner, T.C. Memo. 2006-193; Goshorn v. Commissioner, T.C. Memo. 1993-578. In addition, the Court recognizes that the temporary regulations cited above can be somewhat ambiguous concerning the records that a taxpayer needs to maintain. Goshorn v. Commissioner, supra.

On the basis of the record and testimony provided at trial, we find that petitioner has established that he spent more than 750 hours performing significant work on his rental properties and that this was his sole business during 2001. Petitioner provided evidence to support that he handled over 80 issues for 11 pieces of property. Respondent concedes that petitioner performed repairs for larger projects himself and also hired contractors. Petitioner presented work logs for his properties identifying the portions of the properties being repaired and whether a specific contractor was hired. Thus, we find that petitioner is a qualified real estate professional within the meaning of section 469(c)(7)(B).

Next, we must determine whether petitioner elected to treat his rental real estate activities as a single activity pursuant to section 469(c)(7)(A). The taxpayer must clearly notify the Commissioner of his intent to make an election to treat various rental real estate activities as a single activity. See Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781,

795 (11th Cir. 1984). To make an election "the taxpayer must exhibit in some manner * * * his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded" by the governing statute. Young v. Commissioner, 83 T.C. 831, 839 (1984), affd. 783 F.2d 1201 (5th Cir. 1986).

At trial petitioner claimed that during discussions with respondent about the calculations which ultimately led to a stipulated decision for the 1995 taxable year in 2001, he wrote on a piece of paper that he wanted to aggregate his rental real estate and tried handing it over to respondent. Petitioner argues that by giving respondent this note, he was electing to aggregate his rental real estate activities. Section 1.469-9(g)(3), Proposed Income Tax Regs., 60 Fed. Reg. 2561 (Jan. 10, 1995), requires a taxpayer wishing to make such an election to file a statement with the taxpayer's original return declaring that the election is under section 469(c)(7)(A). The final regulation, which is substantially the same as the proposed regulation, became final on December 22, 1995, and is generally effective for taxable years beginning on or after January 1, 1995, and to elections made under section 1.469-9(g), Income Tax Regs., with returns filed on or after January 1, 1995. See sec. 1.469-11(a)(3), Income Tax Regs. Therefore, to satisfy the requirements to make an election to treat all rental real estate activities as a single activity under section 469(c)(7)(A), a

taxpayer must make an explicit election with his or her original return.

Since 1994 petitioner has aggregated his rental income and expenses as if the rental real estate activities were a single activity. Petitioner did not attach to any return a statement electing to treat his rental real estate activities as a single activity. The fact that petitioner consistently aggregated the rental income and expenses from the rental properties on his Schedules E is not a deemed election under the requirements of section 469(c)(7)(A).

In Kosonen v. Commissioner, T.C. Memo. 2000-107, the taxpayer aggregated his rental income and expenses in one column on the Schedules E attached to his 1994, 1995, and 1996 returns. The taxpayer in Kosonen argued that aggregating his rental activity losses on his returns showed that he had elected to treat his rental real estate activities as a single activity under section 469(c)(7). This Court held that the fact that the taxpayer aggregated his losses was not clear notice that he intended to elect under section 469(c)(7). Kosonen v. Commissioner, supra (citing Knight-Ridder Newspapers, Inc. v. United States, supra at 795)). Accordingly, petitioner did not elect to treat his rental real estate activities as a single activity under section 469(c)(7)(A). Moreover, petitioner does

not contend that he materially participated in each of his rental activities when viewed separately.

On the record before us, we find petitioner was a real estate professional during the years at issue but conclude that petitioner does not satisfy the exception set forth in section 469(c)(7). Therefore he is not entitled to deduct real estate losses in excess of $25,000 for 2001.

B. <u>NOL Carryover</u>

Section 172 allows a taxpayer to deduct an NOL for a taxable year. A taxpayer's NOL, with certain adjustments, generally consists of the excess of deductions allowed over gross income. Sec. 172(c). Section 172(a) allows an NOL deduction for the aggregate NOL carrybacks and carryovers to the taxable year. Section 172(b) provides for the manner in which an NOL is to be carried back and carried forward.

Petitioner claimed NOL carryovers of $49,958 from 2000 into 2001. In the notice of deficiency respondent disallowed the 2001 NOL carryovers.

Generally, the period for an NOL carryback is 2 years and the period for an NOL carryover is 20 years. Sec. 172(b)(1)(A). However, a taxpayer may elect to waive or relinquish the 2-year carryback period with respect to an NOL from a tax year. Sec. 172(b)(3). To make this election, a taxpayer is required to file an election relinquishing the carryback period by the return due

date for the year the NOL was incurred. Id. Once made, the election is irrevocable; it waives the opportunity to carry back the NOL. Plumb v. Commissioner, 97 T.C. 632, 636 (1991).

Petitioner is not entitled to any NOL carryover for 2001 because he has not shown that he elected to relinquish his carryback period as required by section 172(b)(3). There is no evidence that petitioner filed a 2000 return. Further, there is no evidence to suggest that petitioner had excess losses in 2000 had he filed a proper election to relinquish the carryback period. Because petitioner has not shown that he had excess losses in 2000 and that he properly elected to carry them forward, petitioner's claimed NOL carryovers for 2001 are disallowed.

C. Property Tax Deduction

During 2001 petitioner held a mortgage and deed of trust in a parcel of land owned by Occidental. The deed of trust is the collateral for a promissory note given by Occidental, as owner of the property, to petitioner. As owner, Occidental was liable to pay the property tax. Occidental filed for bankruptcy, and the bankruptcy court revised the note; but payments on the mortgage stopped. Petitioner paid $14,829 of property tax in 2001 to forestall seizure of the property by the county in satisfaction of Occidental's tax liability.

Section 162 allows a deduction for all ordinary and

necessary expenses paid or incurred by a taxpayer in carrying on a trade or business, including rentals or other payments required to be made as a condition to the continued use or possession of property. Sec. 162(a)(3). Petitioner was a real estate professional, and in order to keep possession of the Occidental property, he was required to pay the property tax to prevent the county from seizing it to collect for nonpayment.

Section 164(a) provides a deduction for the payment of real property taxes and other specified taxes paid or accrued by the taxpayer during the taxable year. In addition to specific taxes deductible under section 164(a), the taxpayer may deduct State, local, and foreign taxes paid or accrued in carrying on a trade or business or in an investment-related activity. Sec. 164(a).

We hold petitioner is entitled to a property tax deduction of $14,829.

D. Repairs

Petitioner claimed deductions for repairs on his 33 rental real estate properties for 2001. Petitioner asserts that beginning in 1996 he planned to capitalize all repair expenses over $5,000 and increase that threshold 5 percent each year. Respondent maintains that 78 percent of the amount claimed for these repairs should be immediately deductible and 22 percent should be capitalized. The parties have stipulated that petitioner incurred $134,863 for repairs in 2001. As stated,

respondent agrees that 78 percent of this amount, or $105,193, is currently deductible in 2001. We are left to decide whether the remaining 22 percent is currently deductible.

Section 263 generally prohibits deductions for capital expenditures. Nondeductible capital expenditures include "Any amount paid out * * * for permanent improvements or betterments made to increase the value of any property". Sec. 263(a)(1).

In contrast, deductible repair expenditures include those made merely to maintain property in operating condition. See Ill. Merchs. Trust Co. v. Commissioner, 4 B.T.A. 103, 106 (1926) ("A repair is an expenditure for the purpose of keeping the property in an ordinarily efficient operating condition."). The distinction between a nondeductible capital expenditure and a deductible repair is summarized in section 1.162-4, Income Tax Regs.:

> The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept.

The deductibility of repair expenses also depends upon the context in which the repairs are made. Courts have held that

expenses incurred as part of a general plan of rehabilitation must be capitalized even if they would have been deductible as ordinary and necessary business expenses if separately incurred. See United States v. Wehrli, 400 F.2d 686, 689 (10th Cir. 1968); Norwest Corp. & Subs. v. Commissioner, 108 T.C. 265, 280 (1997).

In June 2008 petitioner met with respondent and agreed that $30,107 of the claimed $134,863 of repair expenses (22 percent) for 2001 was for capital expenditures.

Petitioner now claims that he should be allowed to deduct the remaining 22 percent of the amounts spent in 2001 to make up for amounts that he was not permitted to deduct before 1995. Petitioner has not substantiated this claim with any evidence, and it is unclear how events before 1995 affect the years in issue in any event. Consequently, petitioner is not entitled to deduct 22 percent of the repair expenses he incurred during 2001.

E. Amortization

Section 167(a) allows as a depreciation deduction a reasonable allowance for the wear and tear, exhaustion, and obsolescence of: (1) Property used in the trade or business, or (2) property held for the production of income.

Section 168(e)(1) classifies property as 5-year property if it has a class life of more than 4 years but less than 10 years. Section 168(c) provides that the applicable recovery period of the 5-year property is 5 years. Petitioner claims that he is

entitled to an NOL for 2001 attributable to unused depreciation deductions for the years 1996 through 1999 for property used in his rentals.  Petitioner claims the 5-year property was used for the properties he owned in Ardmore and Newport.  He claims $98,860 was included for these properties, but the record indicates that petitioner incurred a total of $33,126 on Ardmore and $9,503 on Newport.  In any event, petitioner cannot substantiate that these expenditures generated NOL carryovers that were available to reduce his tax liability for 2001. Petitioner is not entitled to an additional amortization deduction in 2001 for his claimed additional amounts from 1996, 1997, 1998, and 1999.

F.  Section 6662 Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a) and (b)(1) for 2001.  Section 6662(a) and (b)(1) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations.  Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c); see Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348 (9th Cir. 1991).  The section 6662(a) penalty is not imposed with respect to any portion of an underpayment to the extent that it

is shown that the taxpayer acted with reasonable cause and good faith.  Sec. 6664(c)(1).

Section 7491(c) provides that the Commissioner bears the burden of production with respect to a taxpayer's liability for a penalty, addition to tax, or additional amount.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001), with respect to the applicability of an accuracy-related penalty.  Once this burden has been met, the burden of proof then falls on the taxpayer.  See id. at 447.  A taxpayer may carry the burden by proving that he was not negligent; i.e., a reasonable attempt to comply with the provisions of the Code was made and the taxpayer's actions were not careless, reckless, or an intentional disregard of rules or regulations.  Sec. 6662(c).  Alternatively, a taxpayer can demonstrate that his underpayment was attributable to reasonable cause and he acted in good faith.  Sec. 6664(c)(1).

On the record before us, we conclude that petitioner failed to carry his burden of showing that there was reasonable cause for the underpayment of tax for 2001.  To the contrary, the record establishes that some of petitioner's practices were negligent.  Petitioner knew that he was not following the law when he tried to deduct 100 percent of his repairs as ordinary and necessary expenses.  Petitioner planned to capitalize all expenses over $5,000 and increase that threshold 5 percent each year.  This is not the proper standard for determining whether

the amounts incurred for repairs should be capitalized.  The proper standard is whether the expenditures extended the life of the properties, increased their value, or changed their character.  Petitioner admits that he replaced the roofs on his properties.  These expenditures extended the life of the rental properties and therefore were not ordinary and necessary business expenses.

Accordingly, we hold that petitioner is liable for the accuracy-related penalty under section 6662(a) for the 2001 year to the extent there is a deficiency after the parties' Rule 155 computation.

G.  Section 6651 Addition to Tax

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1).  Section 6651(a)(1) imposes an addition to tax for failure to timely file a Federal income tax return by its due date with extensions.  The addition equals 5 percent of the tax required to be shown on the return for each month, or fraction thereof, that the return is late, not to exceed 25 percent.  The addition to tax does not apply if the failure was due to reasonable cause and not willful neglect.  To prove reasonable cause for a failure to file a timely return, the taxpayer must demonstrate that he exercised ordinary business care and prudence in filing the return, but was nevertheless unable to file it on time.  Sec. 301.6651-1(c)(1), Proced. &

Admin. Regs. Factors that constitute "reasonable cause" include unavoidable postal delays, death or serious illness of the taxpayer or an immediate family member, or reliance on a competent tax professional in a question of law of whether it is necessary to file a return. McMahan v. Commissioner, 114 F.3d 366, 369 (2d Cir. 1997), affg. T.C. Memo. 1995-547.

Initially, the Commissioner bears the burden of producing evidence that the return was filed late and that it was appropriate to impose the addition to tax. Sec. 7491(c). Thereafter, the taxpayer bears the burden of proving that the late filing was due to reasonable cause and not willful neglect. Rule 142(a); Higbee v. Commissioner, supra at 447.

Respondent determined an addition to tax under section 6651(a)(1) against petitioner for 2001 for failure to timely file his individual income tax return. Petitioner signed the 2001 return on April 7, 2005.

Petitioner contends that he believed he was able to file his 2001 return late because he assumed that his NOLs would make his liability zero. Petitioner's argument that he thought his liability was zero does not excuse the late filing. Petitioner presented no evidence of reasonable cause for his failure to timely file his return. Accordingly, we hold that petitioner is liable for the section 6651(a)(1) addition to tax for 2001.

To reflect the foregoing,

Decision will be entered under Rule 155 in docket No. 25469-06.

An order of dismissal for lack of jurisdiction will be entered in docket No. 6105-07.