[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-10511

————————————————

Agency No. 15970–17

JAVON R. BEA,
VITA E. BEA,

                                        Petitioners - Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

                                        Respondent - Appellee.

————————————————

Petition for Review of a Decision of the
U.S. Tax Court

————————————————

(January 31, 2019)

Before WILSON and BRANCH, Circuit Judges, and VINSON,[*] District Judge.

PER CURIAM:

———————————

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

Appellants Javon and Vita Bea employed a tax professional to prepare their joint federal income tax returns. In 2013 and 2014, the Beas' return preparer made significant errors affecting the Beas' 2011–2014 tax returns, culminating in a choice to elect under 26 U.S.C. § 172(b)(3) to irrevocably waive the carryback period for any net operating loss (NOL)[1] that the Beas incurred in 2014. The Beas signed and filed their 2014 return with this election included. After discovering errors in the Beas' 2011–2013 tax returns, the IRS issued a Notice of Deficiency (NOD) to the Beas. The NOD included a deficiency for the Beas' 2012 tax return; the IRS did not permit the Beas to carry back their 2014 NOL to apply against their 2012 tax deficiency because the Beas had irrevocably waived their ability to carry back their 2014 NOL by making an election under 26 U.S.C. § 172(b)(3).

The Beas challenged the IRS's actions in Tax Court, and the court granted the IRS's motion for summary judgment. The Beas now contest the Tax Court's final decision on the basis that they did not knowingly or voluntarily make the § 172(b)(3) election and thus the Tax Court should have allowed them to revoke this election. The Beas also contend that the Tax Court failed to consider relevant material facts that the Beas supplied in support of their motion for summary judgment. After the benefit of oral argument, we affirm the Tax Court's decision.

---

[1] A NOL can generally be understood as the excess of allowable taxpayer deductions over gross income. 26 U.S.C. § 172(c).

I.

Javon and Vita Bea filed joint federal income tax returns for the years 2011–2014. The Beas employed Jo Ann Schoen, an enrolled agent with the IRS,[2] to prepare their individual and business income tax returns beginning in 1987. Throughout 2011–2014, Schoen worked for the firm Accounting & Tax Associates, Inc.; she also prepared the Beas' tax returns for these years.

The Beas own Oronoco Investments, LLC (Oronoco), an investment company organized as a partnership. Because Oronoco is taxed as a partnership, its income and losses pass through to the Beas' individual income tax returns. In 2013, Schoen prepared a Form 1065 U.S. Return of Partnership Income for Oronoco. The form reflected a NOL which produced personal flow-through losses for the Beas (2013 NOL). Schoen later revised the Form 1065 to reflect the correct amount of loss attributed to Javon and Vita on their respective Schedule K-1s.[3] When Schoen prepared the Beas' Form 1040 U.S. Individual Income Tax Return for 2013, however, she did not correctly update the Oronoco flow-through losses as reflected in the Schedule K-1s. Schoen's failure to make this update resulted in

---

[2] Pursuant to 31 U.S.C. § 330 and 31 C.F.R. § 10, the IRS licenses individuals to practice before it and represent parties as "enrolled agents."

[3] A Schedule K-1 is used to report a taxpayer's share of a partnership's income, deductions, and credits.

3

an overstated NOL of $4,696,962 on the Beas' 2013 income tax return.  The Beas carried this 2013 NOL back to obtain refunds for taxable years 2011 and 2012.[4]

In 2014, Oronoco's Form 1065 reflected a NOL of $11,904,644 (2014 NOL), which Schoen validly claimed on the Beas' 2014 Form 1040.  Schoen elected to waive the entire carryback period with respect to the 2014 NOL—allegedly without consulting the Beas[5]—because she believed the 2013 NOL carryback sufficiently eliminated the Beas' tax liabilities for 2011 and 2012.  The Beas signed and filed their 2014 Form 1040.[6]

The IRS audited the Beas' 2011–2014 returns, discovered errors in their 2013 return, and in 2017 issued a NOD that included deficiencies for taxable years 2011 and 2012.  The Beas sought to carry back their 2014 NOL to apply against their 2012 deficiency, but the IRS refused because the Beas had waived their ability to carry back the 2014 NOL by including the irrevocable § 172(b)(3) election in their 2014 return.

The Beas challenged the IRS's actions in Tax Court.  The parties filed a joint stipulation of facts and cross motions for summary judgment.  The Beas included

---

[4] The Beas received tentative refunds of $1,205,012 for 2011 and $1,035,520 for 2012.

[5] The "Election to Waive Net Operating Loss Carryback" provision stated: "Pursuant to IRC Section 172(b)(3), the taxpayer hereby elects to relinquish the entire carryback period with respect to the net operating loss incurred for the tax year ended 12/31/14."

[6] The Beas' signed statement on Form 1040 stated: "Under penalties of perjury, I declare that I have examined this return and the accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

4

"Additional Material Facts" concerning their ignorance of the § 172(b)(3) election to support their motion.  The Tax Court found that the "Additional Material Facts" were irrelevant and immaterial, denied the Beas' motion for summary judgment, granted the IRS's motion for summary judgment, and ordered the parties to submit a proposed decision consistent with the order.  The parties submitted a computation for entry of decision, and the Tax Court entered a decision holding that the Beas owed $685,703 for a deficiency in their 2012 income taxes.  The Beas appealed.

## II.

We review the district court's grant of summary judgment de novo, viewing all evidence and making all reasonable inferences in favor of the opposing party. *Whatley v. CNA Ins. Co.*, 189 F.3d 1310, 1313 (11th Cir. 1999) (per curiam).  We affirm a grant of summary judgment only when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  We review a trial court's factual findings for clear error. *Pullman-Standard v. Swint*, 456 U.S. 273, 295, 102 S. Ct. 1781, 1794 (1982).

Taxpayers may usually deduct the sum of (1) NOL carryovers and (2) NOL carrybacks to a taxable year on their income tax return for that year.  26 U.S.C. § 172(a).  Taxpayers can carry back unused amounts of NOL to the two taxable years immediately preceding the year recognizing the NOL, then carry any remaining NOL over through the twenty taxable years following the year it was

5

recognized.  *Id.* at § 172(b)(1)(A).  Taxpayers *must* carry unused NOL back two years before carrying it over, unless they elect under § 172(b)(3) to waive their right to carry back the NOL.  *Yoakum v. Comm'r*, T.C.M. (RIA) 2004-191.

A taxpayer may make an election under § 172(b)(3) "in such manner as may be prescribed by the Secretary."  26 U.S.C. § 172(b)(3).  The Secretary details the "manner" of making this election in Treasury Regulation § 301.9100-12T: taxpayers must attach a statement to the return for the taxable year in question, state that the election is made under § 172(b)(3), and provide information about the election, including the period for which it applies and the taxpayer's basis or entitlement for making the election.  *See* Treas. Reg. §§ 301.9100-12T(a), (d).  "Such election, once made for any taxable year, shall be irrevocable for such taxable year."  26 U.S.C. § 172(b)(3).  When a taxpayer complies with the statutory requirements to make a valid election to relinquish his right to carry back a net operating loss, the taxpayer "unequivocally communicates his election and binds himself to his decision concerning the best use of his net operating loss."  *Carlstedt Assocs., Inc. v. Comm'r*, 56 T.C.M. (CCH) 1090 (1989) (quoting *Young v. Comm'r*, 783 F. 2d 1201, 1205 (5th Cir. 1986)); *cf. Miller v. Comm'r*, 99 F. 3d 1042, 1044–45 (11th Cir. 1996) (following Fifth Circuit precedent in finding that an election under § 172(b)(3) was invalid because it was *ambiguous*, in contrast to

6

*unambiguous* elections, which the Fifth Circuit previously found to be valid regardless of taxpayer intent).[7]

The Beas paid a professional to prepare their tax returns in 2014. That professional return preparer took all the steps required by Treas. Reg. § 301.9100-12T(d) to make a valid election under § 172(b)(3) on the Beas' joint tax return, a point that the Beas do not deny. The Beas affirmed with their signatures that they had examined their tax return, and subsequently filed the return containing this unambiguous election—which is expressly described as "irrevocable" by statute. The Beas contend that they neither knew nor understood the implications of the § 172(b)(3) election on their 2014 tax return, but they did not ask their tax return preparer about the § 172(b)(3) election on the return that they signed.

Though it was the error of the Beas' return preparer that put the Beas in this undesirable tax position, the Beas may not now disavow the unambiguous language of the irrevocable election they made on their signed 2014 tax return. The Tax Court correctly interpreted § 172(b)(3) and found that nothing in the statute requires the IRS or courts to consider a taxpayer's subjective intent in

---

[7] In this case, the Beas do not contend that the election did not contain the requisite information, as was the case in *Miller*. Rather, they challenge the effectiveness of the election based on their lack of knowledge. If the IRS was required to determine the individual knowledge of each taxpayer making an unambiguous election under § 172(b)(3), the IRS would bear the risk of taxpayers' selection of—and reliance on—return preparers, as well as the administrative burden of determining subjective intent for all § 172(b)(3) elections. Nothing in relevant provisions of the Tax Code indicates that Congress intended to place this burden on the IRS.

7

making the election.  The Tax Court also found that the Beas did not make an ambiguous election under that section, and therefore the court correctly determined that the Beas could not revoke or disavow their election.

Finally, the Beas argue that the Tax Court clearly erred in finding irrelevant the "Additional Material Facts" supplied with their motion for summary judgment. The Beas stated in their motion that the primary issue before the Tax Court was whether their ignorance regarding the § 172(b)(3) election in their 2014 tax return permitted them to disavow or revoke the election, and their "Additional Material Facts" were relevant to this issue.  The Tax Court disagreed, however, and reasoned that the Beas' knowledge was irrelevant to whether the Beas could revoke their § 172(b)(3) election because the Beas' signed 2014 tax return contained the explicit, irrevocable election, and there was nothing in the statute or regulations to suggest that taxpayer knowledge might affect the revocability of that election.  The Tax Court therefore did not view further evidence of the Beas' lack of knowledge to be relevant to its inquiry.  The Tax Court did not clearly err in this finding.  Accordingly, we affirm.

**AFFIRMED**.